### CHRISTOPOULO v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. February 2, 1916.)

No. 1391.

1. GRAND JURY ⊙⇒5—QUALIFICATION OF JURORS—CONVICTION OF CRIME.

Under Judicial Code (Act March 3, 1911, c. 231) § 275, 36 Stat. 1164 (Comp. St. 1913, § 1252), requiring jurors in United States courts to have the same qualifications as jurors in the highest court of the state, Const. S. C. art. 5, § 22, requiring each juror to be a qualified elector of good moral character, and article 2, § 6, disqualifying persons convicted of certain named offenses, one who had been convicted on plea of guilty of a violation of the act to regulate commerce by making false reports of the weight of certain articles shipped was not thereby disqualified to serve as a grand juror.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 8–13, 15; Dec. Dig. ⊙⇒5.]

2. GRAND JURY ⊙⇒5—QUALIFICATIONS—GOOD CHARACTER.

The commission of that offense does not show that the juror was not a man of good moral character, since such character is presumed, unless the want of it is shown by conviction of a disqualifying crime, or is made to appear by evidence outside the record.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 8–13, 15; Dec. Dig. ⊙⇒5.]

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. GRAND JURY ☞5—QUALIFICATIONS—GOOD CHARACTER—STATUTE.

Civ. Code S. C. 1912, § 4036, providing that, if any person whose name is placed in the jury box is convicted of any scandalous crime or is guilty of any gross immorality, the board of jury commissioners shall withdraw his name from the box, does not modify the standard of qualification fixed by the state Constitution, but is merely a direction to the board; and the presence of one whose character was questioned, but who was retained on the list by the board, does not invalidate an indictment.

[Ed. Note.— For other cases, see Grand Jury, Cent. Dig. §§ 8–13, 15; Dec. Dig. ☞5.]

4. WITNESSES ☞337(6)—CREDIBILITY—COMMISSION OF OTHER OFFENSES.

In a prosecution for falsely representing himself to be a citizen of the United States, defendant, who took the stand in his own behalf, may be required to answer whether he ran a blind tiger, when the court charges that his answer can be considered, not as evidence of guilt, but only as affecting, in so far as it involved moral delinquency, his credibility as a witness.

[Ed. Note.— For other cases, see Witnesses, Cent. Dig. §§ 1132, 1140-1142, 1146–1148; Dec. Dig. ☞337(6).]

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Constan H. Christopoulo was convicted of falsely representing himself to be a citizen of the United States, and he brings error. Affirmed.

John I. Cosgrove, of Charleston, S. C. (W. Turner Logan, of Charleston, S. C., on the brief), for plaintiff in error.

J. Waties Waring, Asst. U. S. Atty., of Charleston, S. C. (Francis H. Weston, U. S. Atty., of Columbia, S. C., on the brief), for the United States.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. Plaintiff in error, hereinafter called defendant, was convicted, under section 79 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1103 [Comp. St. 1913, § 10247]), of falsely representing himself to be a citizen of the United States. The record shows these facts:

In March, 1915, there was an enrollment of voters for a municipal primary in the city of Charleston, S. C. This enrollment was conducted by the city Democratic executive committee under rules and regulations which were authorized or prescribed by the statute laws of the state. Among these rules was one "that if a naturalized citizen he must show his papers before being permitted to enroll." Defendant is a native of Greece, but at the time in question was not a naturalized citizen of the United States, although he had declared his intention to become a citizen more than two years before. He appeared at the proper place of enrollment and inquired of those in charge of the books as to his right to enroll. In compliance with the rule just quoted he produced his intention papers, which were examined by one of the officers in charge, and thereupon, after making oath that he was duly qualified to vote, he was allowed to enroll. The person who made the examination stated at the trial that he himself did not know the differ-

ence between citizenship papers and intention papers; but defendant admitted on cross-examination that he knew he was not a citizen of the United States, that he had only declared his intention to apply for citizenship, and that an additional application was necessary before he could become a citizen. He also admitted that he had not voted in previous years because he was not a citizen. Shortly after enrolling defendant was arrested and bound over for trial by the United States commissioner. The next grand jury was organized on the morning of the 1st of June, and was discharged, after returning a number of indictments, in the afternoon of the following day. The defendant's case was called for trial the next morning, the 3d of June, at which time, and before pleading, he moved to quash the indictment on the ground that the foreman of the grand jury, one John Cart, had theretofore been convicted, upon a plea of guilty, of a disqualifying crime; and the denial of that motion is the principal ground relied upon for a reversal of the judgment. It seems that Cart had been indicted in March, 1910, for a violation of the act to regulate commerce, in that he had made false reports of the weights of certain articles shipped for transportation in the years 1908 and 1909. He pleaded guilty to this offense and was punished with a fine of $750.

For the purposes of this case we shall assume that the motion to quash was seasonably made (Crowley v. United States, 194 U. S. 461, 24 Sup. Ct. 731, 48 L. Ed. 1075), although defendant was arrested and bound over more than two months before, and apparently might have ascertained at a much earlier date the alleged disqualification of Cart. We also lay aside the suggestion that the indictment is valid, even if Cart was disqualified, because 20 grand jurors were present when the indictment was found and no claim is made that any of the others were not qualified. The question then remains whether Cart was disqualified by reason of the offense which he had previously committed.

[1] The Judicial Code of the United States (section 275) provides that jurors in courts of the United States shall have the same qualifications as jurors in the highest court of the state. Under the Constitution of South Carolina (section 22 of article 5) each juror must be a qualified elector of good moral character and between the ages of 21 and 65 years. By section 6 of article 12, the following persons are disqualified as electors, namely:

"Persons convicted of burglary, arson, obtaining goods or money under false pretences, perjury, forgery, robbery, bribery, adultery, bigamy, wife-beating, housebreaking, receiving stolen goods, breach of trust with fraudulent intent, fornication, sodomy, incest, assault with intent to ravish, miscegenation, larceny, or a crime against the election laws."

It will be observed that the list does not include convictions for felony or misdemeanor, and the enumeration of specific crimes is necessarily exclusive, because the evident purpose is to declare who shall have the right to vote in the state of South Carolina. The offense of which Cart was convicted, which at the time of its commission was only a misdemeanor, is plainly not within or covered by any of the named crimes which disqualify an elector. It must, therefore, be held that

Cart had not been convicted of a disqualifying crime under the laws of South Carolina. If he had the right to vote in that state, which seems to us not doubtful, he was qualified to act as a grand juror, notwithstanding the fact that he had been previously convicted of a statutory misdemeanor.

[2, 3] It is argued that the commission of this offense shows that Cart was not a man of good moral character, and therefore not qualified to serve as a grand juror. But every elector must be presumed to be of good moral character, unless the want of it is manifested by conviction of a disqualifying crime or is made to appear by evidence dehors the record. True, it is provided in section 4036 of the Civil Code of South Carolina that:

"If any person whose name is placed in the jury box is convicted of any scandalous crime, or is guilty of any gross immorality, his name shall be withdrawn therefrom by the board of jury commissioners, and he shall not be returned as a juror."

But this does not modify the standard of qualification fixed by the state Constitution; it is merely a direction to the board that makes up the list of jurymen. If the board retains on the list the name of a person whose moral character is called in question, but who is otherwise a qualified elector, the presence of that person on the grand jury would not invalidate an indictment. We think it obvious that this must be so, since a contrary conclusion would seriously impede the administration of justice.

Without further comment we deem it sufficient to express the opinion that the court below did not err in refusing to quash the indictment.

[4] The only remaining assignment that needs to be noticed relates to a question of evidence. The defendant was a witness in his own behalf and was asked on cross-examination if he ran a "blind tiger," which implied that he sold liquor unlawfully. The question was allowed over his objection and he was required to answer. In charging the jury the trial court made it plain that this evidence was admitted, not as tending in any wise to prove the offense for which defendant was on trial, but solely, in so far as it involved moral delinquency, as affecting his credibility. For this purpose, to which it was explicitly limited, the evidence was admissible, as this court has recently held in Fields v. United States, 221 Fed. 242, 137 C. C. A. 98.

The question of defendant's intent was fairly submitted to the jury and upon that issue the verdict was warranted by the testimony.

Affirmed.