McCOY v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. January 12, 1918.)

No. 3082.

COURTS ⬥376—COMPETENCY OF WITNESSES—RULE OF DECISION IN FEDERAL COURT—STATE LAW.

When the territory of Florida applied for admission into the Union, its citizens had in 1839 adopted a Constitution, declaring in article 17, § 1, that all laws and parts of laws now in force or which may be hereafter passed, not repugnant to the provisions of the Constitution, shall continue in force until by operation of their provisions or limitations the same shall cease to be in force, or until the General Assembly shall alter or repeal the same. By Act March 15, 1843 (Laws 1843, No. 37), it was enacted by the territorial Legislature of Florida that no person shall be deemed an incompetent witness by reason of having committed any crime, unless he has been convicted thereof in the territory, but the conviction of any person in any court without the territory of a crime which, had he been convicted thereof within the territory, would render him an incompetent witness may be given in evidence to affect his credibility. Florida was admitted into the Union as a state on March 3, 1845, and every department became filled at once by the adoption of territorial laws and appointment of territorial officers. Judiciary Act Sept. 24, 1789, c. 20, 1 Stat. 73, declares that the laws of the several states shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. *Held*, that the Judiciary Act adopted the law of the state in force when it was admitted to the Union and the federal courts were created therein, and hence, in a criminal prosecution in a federal District Court for Florida, a witness convicted of a felony in the District Court for Arkansas is competent.

In Error to the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Thomas C. McCoy was convicted of conspiracy to defraud the United States by removing and putting on the market large quantities of distilled spirits without the payment of the tax thereon, and he brings error. Affirmed.

A. E. Holton, of Winston-Salem, N. C., for plaintiff in error.

H. S. Phillips, U. S. Atty., of Tampa, Fla., and Fred Botts, Asst. U. S. Atty., of Jacksonville, Fla.

Before WALKER and BATTS, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. The plaintiff in error was convicted in the District Court for the Southern District of Florida of conspiracy to defraud the United States, by removing and putting on the market large quantities of distilled spirits without the payment of the tax thereon. A witness who delivered material testimony against the defendant had been previously convicted in the United States District Court for the Western District of Arkansas, under an indictment charging him with the re-use of internal revenue stamps, and sentenced to nine years' imprisonment in the Leavenworth penitentiary; and was undergoing this sentence at the time he was offered as a witness.

Objection was made to his competency as a witness because he was a convicted felon. The objection was overruled, and the witness was permitted to testify.

The courts of the United States uniformly held from the time they were created that the rules of evidence in criminal cases were the rules which were in force in the respective states when the Judiciary Act of 1789 was passed. This proposition was first challenged in the Supreme Court of the United States some 60-odd years after the passage of the Judiciary Act of 1789, and the court adhered to the practice hitherto followed. United States v. Reid, 12 How. 361, 13 L. Ed. 1023. After reference to the Judiciary Act of 1789 and the Crimes Act of 1790 (Act April 30, 1790, c. 9, 1 Stat. 112), Chief Justice Taney in that case said:

"Yet, as the courts of the United States were then organized, and clothed with jurisdiction in criminal cases, it is obvious that some certain and es-. tablished rule upon this subject was necessary to enable the courts to administer the criminal jurisprudence of the United States. And it is equally obvious that it must have been the intention of Congress to refer them to some known and established rule, which was supposed to be so familiar and well understood in the trial by jury that legislation upon the subject would be deemed superfluous. This is necessarily to be implied from what these acts of Congress omit, as well as from what they contain. But this could not be the common law as it existed at the time of the emigration of the colonists, for the Constitution had carefully abrogated one of its most important provisions in relation to testimony which the accused might offer. It could not be the rule which at that time prevailed in England, for England was then a foreign country, and her laws foreign laws. And the only known rule upon the subject which can be supposed to have been in the minds of the men who framed these acts of Congress was that which was then in force in the respective states, and which they were accustomed to see in daily and familiar practice in the state courts."

Half a century after the pronouncement in the Reid Case, supra, the question of the competency of witnesses in criminal trials in the courts of the United States was again before the Supreme Court of the United States in the case of Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429. In that case the trial occurred in the District Court for the Northern District of Texas. A witness convicted and sentenced for felony, in the superior court of Iredell county, state of North Carolina, was permitted to testify against an objection as to his competency because of his previous conviction of a felony. In ruling on this exception, the Supreme Court examined the law of Texas as it existed at the time of the incorporation of that state into the Union and the legislation of the Congress of the United States, and reached the conclusion that, inasmuch as there had been no express legislation by Congress on the subject, modifying or changing the law of Texas as it existed at the time of the annexation of that state, the statute of Texas existing at the time that state became a part of the Union controlled, and held the witness to be competent. The statute of the Republic of Texas had adopted the common law of England, so far as the same was not inconsistent with the laws of the Republic of Texas. There was a later statute, enacted by the state of Texas after that state came into the Union, and this later statute was urged as furnishing the rule prescribing the competency of witnesses, rather

than that in force at the time of the annexation of Texas. The holding of the court was expressed as follows (144 U. S. at page 303, 12 Sup. Ct. 630, 36 L. Ed. 429):

"The competency of witnesses in criminal trials in the courts of the United States held within the state of Texas is not governed by a statute of the state which was first enacted in 1858, but, except so far as Congress has made specific provisions upon the subject, is governed by the common law, which, as has been seen, was the law of Texas before the passage of that statute and at the time of the admission of Texas into the Union as a state."

We thus deduce the rule, as expounded in this case and in the Reid Case, to be that, in the absence of specific legislation by Congress, the rules of evidence in the courts of the United States affecting the competency of witnesses in criminal trials is the law of the state in which the trial occurs as it existed when that state became a part of the Union.

Although the Congress of the United States by legislation has disqualified as a witness one convicted of perjury or subornation of perjury, and has made specific provisions for a defendant to testify at his own request, and for a husband or wife to testify in any prosecution for bigamy or unlawful cohabitation, yet no legislation has come under our notice affecting the rule prescribed in the Reid and Logan Cases on the subject of the competency of a witness who had been previously convicted of a felony.

When the territory of Florida applied for admission into the Union, its citizens had, in 1839, adopted a Constitution, which contained the following provision, in section 1, article 17, thereof:

"That all laws and parts of laws, now in force, or which may be hereafter passed by the government and legislative council of the territory of Florida, not repugnant to the provisions of this Constitution, shall continue in force, until by operation of their provisions or limitations, the same shall cease to be in force, or until the General Assembly of this state shall alter or repeal the same," etc.

By the act of March 15, 1843 (Laws 1843, No. 37), it was enacted by the territorial Legislature of Florida:

"That no person shall be deemed an incompetent witness by reason of having committed any crime, unless he has been convicted thereof in this territory; but the conviction of any person, in any court without the territory, of a crime which, if he had been convicted thereof within this territory, would render him an incompetent witness here, may be given in evidence to affect his credibility."

Florida was admitted into the Union as a state on March 3, 1845; and on the admission of Florida as a state the organization of the government under the Constitution became complete, and every department became filled at once, by the adoption of territorial laws and the appointment of territorial officers, for the time being. Benner et al. v. Porter, 9 How. 236, 13 L. Ed. 119.

The conclusion, then, is inevitable that the witness to whom objection was made was competent to testify under the Florida territorial act of March 15, 1843, because that act, under the provisions of section 1, article 17, of the Constitution of 1839, immediately became the law of the state of Florida on March 3, 1845, the date of the admission of Florida into the Union as a state.

We have carefully examined the other assignments of error, and they are without merit, and are of such character as not to require any detailed reference.

The judgment is affirmed.

BATTS, Circuit Judge (concurring in the judgment). Upon trial of defendant in the District Court of the United States for the Southern District of Florida, for an offense against the United States, the testimony of one Casper was received. The witness was at the time serving a sentence for having used canceled revenue stamps of the United States, following conviction in the United States District Court in Arkansas. If his testimony was improperly received, the judgment in this case should be set aside.

The government insists that the competency of the witness to testify is determined by a statute of Florida, passed March 10, 1845 (Laws 1845, No. 14), a date subsequent to the passage of the act authorizing the admission of the state into the Union, but prior to the organization of the state government. The act of March 10, 1845, provided that no witness should be excluded by reason, of having been convicted of a criminal offense, except certain named offenses, which did not include the crime for which Casper was convicted. It is further insisted that, if this act does not have application, the law to be applied is a territorial act of 1843, to the effect that:

"No person shall be deemed an incompetent witness by reason of having committed any crime, unless he has been convicted thereof in this territory."

The conclusion reached by my Brethren is to the effect that the rules of evidence to be applied by the federal courts in criminal cases are the rules which obtained in the territory included within a district at the time of the establishment of the federal court therein, or at the time the state entered the Union. The conclusion which I have reached is that the common law, as it obtained in the original states at the time of the passage of the Judiciary Act, as modified by acts of Congress since that time, constitutes the rules of evidence to be applied in criminal cases in federal courts.

The opinion of the majority is predicated upon the cases of United States v. Reid, 12 How. 361, 13 L. Ed. 1023, and Logan v. United States, 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429. These cases do not, in my judgment, establish the proposition made by them. The cases consist, on the contrary, with the rules established by practice from the beginning of the government to this time and essential to an orderly and uniform administration of the criminal laws of the United States.

The case of United States v. Reid, supra, involved the construction of the Thirty-Fourth section of the act of Congress of 1789, the Judiciary Act; the section now being codified in section 721 of the Revised Statutes (Comp. St. 1916, § 1538). The language of the section was held to extend to civil cases only. It is suggested that:

"It could not be supposed, without very plain words to show it, that Congress intended to give to the states the power of prescribing the rules of evidence in trials for offenses against the United States."

The opinion calls attention to the fact:

"Nor is there any act of Congress prescribing, in express words, the rules by which the courts of the United States are to be governed in the admission of testimony in criminal cases."

Continuing:

"But we think it may be found with sufficient certainty, not, indeed, in direct terms, but by necessary implication, in the acts of 1789 and 1790, establishing the courts of the United States."

And:

"The law by which, in the opinion of this court, the admissibility of testimony in criminal cases must be determined, is the law of the state, as it was when the courts of the United States were established by the Judiciary Act of 1789."

Again, the court says:

"But the rules of evidence in criminal cases are the rules which were in force in the respective states when the Judiciary Act of 1789 was passed. Congress may certainly change it whenever they think proper, within the limits prescribed by the Constitution. But no law of the state made 'since 1789 can affect the mode of proceeding or the rules of evidence in criminal cases."

The statement of the law thus made in the Reid Case is certainly very different from that now announced by this court. It is true that there is no statement to the effect that no law of a territory made since 1789 can affect the mode of proceeding or the rules of evidence in criminal cases; nor is there a statement to the effect that no law of a foreign jurisdiction, made operative after 1789, can affect the mode of proceeding or the rules of evidence in criminal cases. But, certainly, any ruling which will permit a statute of any territory, or a law of any jurisdiction conflicting with the common law as it existed in 1789, to modify that law in the trial of criminal cases in the courts of the United States, would be in conflict with the reasoning upon which the court in the Reid Case concluded that the common law as it existed in 1789 had become a part of the federal judicial machinery.

The construction of section 858 again arose in the case of Logan v. United States, supra, the court stating that the question whether the existing statutes of the state of Texas upon this subject are applicable to criminal trials in the courts of the United States held within the state depended thereupon. It is shown that the common law of England was, in certain criminal matters, adopted by the Republic of Texas in 1836, and that this act was in force when Texas was admitted to the Union in 1845. The court quotes from the Reid Case, supra, to this effect:

"The law by which, in the opinion of this court, the admissibility of testimony in criminal cases must be determined, is the law of the state as it was when the courts of the United States were established by the Judiciary Act of 1789."

Again:

"The courts of the United States have uniformly acted upon this construction of these acts of Congress, and it has thus been sanctioned by a practice of 60 years."

247 F.—55

The discussion is concluded:

"And therefore the competency of witnesses in criminal trials in the courts of the United States held within the state of Texas is not governed by a statute of the state which was first enacted in 1858, but, except so far as Congress has made specific provisions upon the subject, is governed by the common law, which, as has been seen, was the law of Texas before the passage of that statute and the admission of Texas into the Union as a state."

It is, of course, possible to argue from this last quotation that, if the common law had not obtained in Texas at the time of its admission into the Union, some different rule of law would have applied. This, however, is not the decision made. The decision is that the competency of witnesses in criminal trials in courts of the United States is governed by the common law. There was no necessity for making any other ruling, and no other ruling was made. The mere statement which followed this announcement of the law, to the effect that the common law obtained in Texas at that time, is, indeed, a statement of fact, but not a statement of any fact which the opinion at any place indicates could have affected the decision rendered. So far as I have been able to ascertain, this is the latest expression from the Supreme Court. In the case, however, of Maxey v. United States, 207 Fed. 329, 125 C. C. A. 79, the Logan Case is cited and this language used:

"The competency of witnesses to testify in criminal cases in the courts of the United States is determined by the common law, except where Congress in special cases may otherwise provide."

The distinction made by the Judiciary Act of 1789 between the rules of evidence to be applied in civil cases and in criminal cases was entirely proper. In civil cases arising at the common law, or in equity, or in admiralty cases, the property rights to be determined are so intimately connected with the rules of evidence by which these rights are established, and the property rights within the several states are so diverse, that the law, to the effect that the rules of evidence which obtained in the several states should be utilized by the courts, was not only an eminently proper one, but one absolutely essential to an efficient administration of the laws of the states in the courts of the United States. In criminal cases, on the other hand, the courts of the United States administered no law of any state; they have alone in such cases to do with the statutes of the United States. There is uniformity in the criminal law. It has been the intention of Congress, in passing each criminal statute, that it should have a like application to every person affected by the laws of the United States. It could not have been intended that one person could be convicted in a state of an offense against the United States, and that another person who had done the same thing in another state might escape conviction on account of a difference in the rules of evidence, prescribed, not by Congress, but by some law-making power either subordinate to it or foreign to it. It was intended that the laws should have an equal and uniform application to every person and to every part of the United States. The Judiciary Act was passed by a government within all parts of whose territory the common law with reference to the admission of evidence obtained, and it should be held, in the absence of specific provisions changing the rule, to have been intended that the

established rules of evidence should be utilized. As a matter of fact, that has been the uniform rule.

Upon three different occasions, large additions have been made to the United States of territories which before the acquisition were not subject to the common law. The territory included in the Florida Purchase was subject to the Spanish law; the territory included in the Louisiana Purchase was subject to the French law; the territory acquired from Mexico had for the groundwork of its jurisprudence the civil law as developed in Spain and her colonies. When these lands were acquired, the mere act of acquisition did not give to them a United States system of laws. There was no such system. Certain constitutional provisions became applicable, and Congress had the power to pass such laws affecting them as it saw fit. But the particular matter under consideration was not the subject of congressional action, and the territories, when brought under the control of the federal courts, were either without rules of evidence, or retained the rules which theretofore obtained, or were subject to the rules which the courts had been in the habit of applying. If the question were ever practically raised, it was settled in a practical way by the courts continuing, as before, to apply the common-law rules of evidence as modified by Congress.

The act of Congress, in making the rules of evidence in civil cases responsive to the existing and future laws of the states, carried the necessary implication that the criminal cases should be subject to other rules. These rules were, not, in terms, prescribed. The necessary implication from this was that these rules, which were an essential part of all judicial procedure with which the makers of the law and the people who were to administer and who were affected by the law were familiar, should become a part of the law. Before the formation of the government, the common law obtained in each of the colonies which afterwards became states in the Union. Its principles permeated all action in each of the efforts made by the colonies at combination and confederation, and in all administrative measures thereunder. When the Constitution of the United States was formulated the common law was recognized. All legislation had thereafter was with reference to it. The Revolution had abrogated some of its principles and some of the perversions of its principles. The Constitution and its amendments had repealed some of its recognized tenets. But the people were a common-law people. The common law was a part of their lives, as the Christian religion was a part. Much of the legislation could not be interpreted without a reference to it. Much of it could not be made effective without its help. It supplied all gaps. There was no more occasion to mention it than there had been primarily to formally enact its principles.

Subsequent to the formation of this government there were acts in a number of the states formally adopting or declaring the existence of the common law. There was some divergence in the defining of its terms and extent, but at the time of the act of 1789 there was no recognition of any difference in the several states as to what constituted the common law. The act was doubtless passed upon the assumption

of its uniformity in all the territory over which the jurisdiction of the courts of the United States was extended. It was in fact uniform. Since that time a few divergences have occurred in the courts in expressing what the common law was; but there has been at no time any substantial difference of opinion as to what the common law was in the colonies at the time of the separation from the mother country, and the establishment of the courts of the United States.

The effect of the establishment of the federal courts was to establish rules of evidence and procedure that went with the courts wherever the courts went. Its procedure was not dependent upon alien systems; its actions were not determined by territorial legislation. The jurisdiction being extended over new lands in civil cases, it inquired into the rules of evidence by which property rights had been established and by which they must be maintained, because the law so provided, and any other provision would have been impractical and unwise. In criminal cases it applied the law of its own creation—the common law as it existed at the time of its creation, because there was a necessary implication that the act so intended, and because any other procedure would have been impractical and unwise.

The extension of the territorial jurisdiction of the federal courts in criminal cases cannot be held to have created the diversity which would have resulted if the courts had followed the rules which severally obtained in the absorbed territories. To permit such result would inevitably destroy the uniformity required for a proper administration of the criminal statutes. To now apply in the several states created from the Louisiana Purchase the civil law as developed in France prior to 1803, as modified by territorial Legislatures, would present difficulties that furnish no compensations—would bring about confusion where clearness and simplicity are paramount considerations. Like observations are to be made with reference to states whose territory was acquired from Mexico. This case illustrates the unnecessary confusion to result from the acquisition of Florida, if we are to forget that this is fundamentally a common-law country. These difficulties have been avoided for more than a century. No good reason can be advanced why we should now abandon the established practice, disregard the decisions which have been made, and inject confusion and doubt where certainty is essential.

Since the preparation of the foregoing opinion, advance sheets of the decision of the Supreme Court in Rosen et al. v. United States (October Term, 1917) 245 U. S. 467, 38 Sup. Ct. 148, 62 L. Ed. ——, have been received. A witness who had been adjudged guilty of forgery in New York was held a competent witness in a District Court of the United States in that state. The ruling is made "in the light of general authority and sound reason." It is gratifying that the Supreme Court has been able to find a way to bring the law more nearly in harmony with progressive thought in the matter of competency of witnesses. The views heretofore expressed are adhered to, but the decision obviates the confusion which would have resulted from having a different rule of evidence for each state, and enables a cheerful concurrence in the judgment of affirmance herein rendered.