## SCAFFIDI et al. v. UNITED STATES.

Circuit Court of Appeals, First Circuit. January 21, 1930.

No. 2336.

Anderson, Circuit Judge, dissenting in part.

William H. Lewis, of Boston, Mass. (Matthew L. McGrath, of Boston, Mass., on the brief), for appellants.

Elihu D. Stone, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before ANDERSON, Circuit Judge, and HALE, and MORRIS, District Judges.

MORRIS, District Judge. The defendants, Leonard Scaffidi and Michael Daddona, alias Mike Letts, with 10 others were indicted at the December, 1927, term of the District Court for the District of Massachusetts, for conspiring on or about the 20th day of September, 1927, and on divers other dates, to violate the National Prohibition Act. They were arraigned on the 21st day of February, 1928, and pleaded not guilty. On January 2, 1929, they were set for trial before a judge and jury. On the 9th day of January, 1929, the jury returned a ver-

dict of guilty against them. On the 10th day of January, 1929, they filed a motion in arrest of judgment based upon the ground that the indictment did not set forth an offense against the United States. On the 14th day of January, 1929, the motion in arrest of judgment was denied and sentence was imposed. The refusal of the court to grant defendants' motion is assigned as error.

■ The indictment alleges that the defendants "willfully, knowingly and unlawfully [did] conspire, combine, confederate and agree together and with divers other persons to the grand jurors unknown, to commit certain offenses against the United States; to wit: the offenses denounced by and in sections 3 and 25 of the Act of Congress of October 28, 1919, commonly known as the National Prohibition Act." This paragraph sets forth the conspiracy which is the gist of the offense.

The object of the conspiracy is more definitely set forth as follows: "It being the purpose and object of said conspiracy and of the said conspirators, and each of them, willfully, knowingly and unlawfully, at and near said Weston, Waltham and Marlboro, and divers other places in said District, the exact location of which are to your grand jurors unknown, to possess, manufacture, sell, and transport intoxicating liquor containing one half of one per cent. or more of alcohol by volume and fit for beverage purposes as defined in section 1 of title 2 of said Act of Congress (27 USCA § 4) and to have and possess property designed for the manufacture of liquor intended for use in violation of said Title II and which has been so used."

The foregoing allegations are followed by 16 overt acts in which it is alleged that the defendants hired premises in Weston and in Marlboro for which they paid rent and in which they set up a still or stills for the illegal manufacture of intoxicating liquor intended for the violation of the National Prohibition Act. It is also alleged that they did manufacture intoxicating liquor in pursuance of the conspiracy.

The overt acts set forth in the indictment are unusually full, complete, and descriptive of the means taken to carry out the conspiracy charged.

Rev. St. § 1025, U. S. Code, tit. 18, § 556 (18 USCA § 556), provides, that: "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

Under this section it has been held that, if the indictment charges the offense in such a way as to fully inform the defendant of the violation of law with which he is charged and protect him, in the event of an acquittal or conviction, against a second trial for the same offense, it is sufficient, although it may contain defects of form. The prevailing tendency is to be satisfied with substance in an indictment rather than insist upon a rigid adherence to form. Dunbar v. United States, 156 U. S. 185, 15 S. Ct. 325, 327, 39 L. Ed. 390; McNiel v. United States (C. C. A.) 150 F. 82; Rosen v. United States, 161 U. S. 29, 33, 16 S. Ct. 434, 480, 40 L. Ed. 606; Price v. United States, 165 U. S. 311, 17 S. Ct. 366, 41 L. Ed. 727.

It is argued that to allege in an indictment or information a violation of section 3 of title 2 of the National Prohibition Act (27 USCA § 12) in the language of the section does not allege a crime, because the Eighteenth Amendment prescribes against the manufacture, sale, etc., of intoxicating liquor for beverage purposes only, and not the manufacture, sale, etc., of intoxicating liquor fit for beverage purposes as the term intoxicating liquor is defined in section 1 of title 2 of the Act (27 USCA § 4).

■ It is within the power of Congress to enact laws to make the Eighteenth Amendment effective. Sections 1 and 3 of the National Prohibition Act are appropriate for the purpose. In the case of Massey v. United States, 281 F. 293, 295 (C. C. A. Eighth), it is said: "While neither the purchase nor the possession of intoxicating liquor is expressly mentioned in the Eighteenth Amendment, it is obvious that the penalizing of its purchase and of its possession efficiently limits the amount of the unlawful sales, manufacture, and importation of such liquor, and therefore the provisions of the National Prohibition Act prohibiting the possession of intoxicating liquor have a substantial relation to the enforcement of the Eighteenth Amendment, and are authorized by it as appropriate legislation, under the implied grant of power to select the means of enforcement. * * * The fact that such a statute may embrace some instances where the possession of the intoxicating liquors is not the result of unlawful sale, manufacture, or importation does not thwart the power of Congress to enact a pro-

hibition, the scope of which is regarded as essential in the legislative judgment to accomplish an admitted power."

In that case there was a demurrer to a count in the information charging possession of intoxicating liquors which was overruled by the trial court. Error was assigned to that ruling on the ground that it is not sufficient to charge that liquor is unlawfully possessed without stating for what purpose it is possessed and because the information did not state what kind of intoxicating liquor was possessed or the percentage of alcohol it contained. In passing upon the defendant's assignment the court said: "Section 3 of title 2 of the National Prohibition Act [27 USCA § 12] makes it unlawful for any person, after the Eighteenth Amendment became effective, to possess intoxicating liquor, except as authorized by that act, and section 32 of title 2 [27 USCA § 49] provides: 'It shall not be necessary in any affidavit, information, or indictment to give the name of the purchaser or to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful, but this provision shall not be construed to preclude the trial court from directing the furnishing the defendant a bill of particulars when it deems it proper to do so.' By the terms of this latter section, as against a demurrer, the allegation that the possession was unlawful and prohibited by section 3 of title 2 of the National Prohibition Act was a sufficient statement of the unlawful possession, and it was not necessary to negative the purposes for which the accused might have possessed the liquor."

In the case of Davis v. United States (C. C. A.) 274 F. 928, the precise question involved in the case at bar was before the Ninth Circuit, and it was held that: In an indictment charging defendants with conspiracy to unlawfully transport, sell, etc., whisky in violation of National Prohibition Act, tit. 2, § 3 (27 USCA § 12) it is not required to aver that the whisky was not to be used for nonbeverage purposes, especially in view of the express provision of title 2, § 32 (27 USCA § 49) that: "It shall not be necessary in any * * * indictment * * * to include any defensive negative averments." See, also: Weinstein v. United States, 11 F.(2d) 505 (C. C. A. 1st); Hockett v. United States (C. C. A.) 265 F. 588; United States v. Jones (D. C.) 298 F. 131; Keith v. United States (C. C. A.) 11 F.(2d) 933; Jelke v. United States (C. C. A.) 255 F. 264, 279.

It is argued that the words "fit for beverage purposes" are not equivalent to the words "for beverage purposes." The defendants rely upon the cases of Middlebrooks et al. v. United States (C. C. A.) 23 F.(2d) 244, and Blaine v. United States (C. C. A.) 29 F. (2d) 651, 653. Both of these cases come from the Fifth Circuit. In the case of Shields v. United States (C. C. A.) 29 F.(2d) 204, the same question came up for consideration, and the distinction was made that the indictment in the Shields Case alleged that the defendants conspired to *"unlawfully* manufacture and possess liquor fit for beverage purposes, while the indictment in the Middlebrooks Case merely charged a conspiracy to manufacture, etc., liquor fit for beverage purposes." It appears to us that the distinction applies equally to the case at bar. It is alleged that the defendant willfully, knowingly and *unlawfully* conspired, etc., and it is further alleged that the purpose and object of the unlawful conspiracy was to willfully, knowingly and *unlawfully* possess, manufacture, sell, and transport intoxicating liquor fit for beverage purposes. To be more specific, the indictment alleges a purpose to unlawfully possess, to unlawfully manufacture, to unlawfully sell, and to unlawfully transport intoxicating liquor fit for beverage purposes. Rulovitch v. United States, 286 F. 315 (C. C. A. Third).

Unlawful manufacture of intoxicating liquor can by no stretch of the imagination be interpreted as lawful manufacture. Pierce v. United States, 252 U. S. 239, 40 S. Ct. 205, 64 L. Ed. 542; Martin v. United States (C. C. A.) 299 F. 287; Rudner v. United States (C. C. A.) 281 F. 516, 518.

It is not required to set forth the object and purpose of a conspiracy with the same particularity as required in an indictment for the substantive offense. Belvin v. United States (C. C. A.) 12 F.(2d) 548. The sufficiency of an indictment in a criminal proceeding should be determined by practical as distinguished from purely technical considerations. It is held in the case of Dunbar v. United States, supra, that: "The pleader is at liberty to use any form of expression, providing only that he thereby fully and accurately describes the offense; and the entire indictment is to be considered in determining whether the offense is fully stated."

It appears to us that the allegations in the indictment sufficiently inform the defendants of the violation of law with which they are charged, and, while it is inartificially drawn with respect to the particular allega-

tion in issue, when the entire indictment is considered, it is saved by the provisions of Rev. St. § 1025 (18 USCA § 556).

Another error assigned is that: "The court refused to compel, the government to elect upon which conspiracy the defendants would be tried but left it to the jury to say whether there was one or two conspiracies."

■ The defendants' request assumed that the court, as a matter of law, must rule that there were two distinct conspiracies and that there was no evidence from which the jury could find that there was a single continuing conspiracy. The court refused so to rule and submitted the question to the jury, under instructions sufficiently favorable to the defendants. On this point the court charged the jury as follows: "If you find, on the other hand, that there was not a central continuing conspiracy, but two disconnected conspiracies, one covering the still at Weston, and a disconnected conspiracy covering the still at Marlboro, then all the defendants should be acquitted, because the government's case is predicated upon the assertion that it was a single enterprise at the core, beginning at Weston and after it was driven out of there by Franks, moving on to Marlboro, and around that the whole thing revolves and that that was continuous."

■ This court in the case of McDonnell v. United States, 19 F.(2d) 801, approved of this practice, provided there was evidence from which the jury might determine as a fact the conspiracy was continuing. See United States v. Kissel, 218 U. S. 601, 607, 31 S. Ct. 124, 54 L. Ed. 1168.

It appears from the evidence that the defendants first hired a building owned by the Boston Athletic Gun Club in Weston, Mass., on or about October 15, 1927; that they set up a still therein and operated it a little over two weeks when the superintendent of the club ascertained what was taking place and required them to move; that they then hired a place in the town of Marlboro, Mass., where they set up a still and operated it until they were raided by the prohibition officers. Whether the same still was moved from Weston to Marlboro does not definitely appear, but from the fact that the still used in Weston and the one in Marlboro were of the same capacity, i. e., 750 gallons, the jury might very properly find that, when the conspirators were driven out of the Gun Club, they moved the same equipment to Marlboro. The same individuals were implicated in Marlboro as at Weston, with the addition of three others, of which Daddona was one. The fact that some of the conspirators drop out and others join does not make two conspiracies. The trial court properly submitted it to the jury to say whether there was one continuing conspiracy having its inception with the operations at Weston and continuing at Marlboro, or whether there were two distinct disconnected conspiracies. There was evidence both with respect to the individuals concerned and the equipment used from which the jury might properly find that there was one continuing conspiracy. The defendants take nothing by this assignment.

Frank Gurgone, a witness called for the government, was asked on cross-examination: "Are you the Frank Gurgone who on the 15th day of December, 1922, was convicted in the District Court of Newton for keeping and exposing liquor for sale?" The answer was "Yes." The witness was then interrogated as to whether he was convicted in the same court on the 2d day of August, 1922, for disturbing the peace and paid a fine of $25. The answer was "No." He was again asked if he was convicted "in the District Court of Central Middlesex at Concord on the thirtieth day of July, 1927," of keeping and exposing liquor for sale "and paid a fine of $100.00." The answer was "Yes." Defendants' counsel then offered in evidence the records of the convictions. Objection was interposed by the Assistant District Attorney, and, after discussion all of the foregoing evidence was ruled out, to which the defendant excepted. The court in his instructions to the jury charged as follows: "I will instruct you, gentlemen, that misdemeanors are not to be considered as affecting a witness' credibility. I don't think they will have that effect anyway. It is probably a moot question. If you know that a man has been convicted of perjury it does help you to decide how far you will believe what he tells you on the stand. If you know that a man has been convicted of a serious embezzlement of a trust fund I should think you would say he was a pretty tainted witness, because a man who will embezzle a trust fund is a man who has a pretty important screw loose in his morals. But suppose you were told that a man had been convicted of over-speeding. You would not attach any importance to it on the question of credibility. Suppose you were told he had sold a little rum on the sly, and had been convicted of that. I don't suppose you would say he was either more or less reliable as a witness on that account. It is not, as I say, one of those kinds of things that go into the moral fiber of a man and affect him as a witness, although that question in some

aspects would be for the jury to decide. I tell you now that these convictions for mere misdemeanors are not evidence against the witness or against his credibility, and I will save you on that."

The foregoing ruling and charge to the jury are assigned as errors.

The ruling of the trial court followed the case of Solomon v. United States, 297 F. 82, decided by this court February 26, 1924. It is now contended that the Solomon Case is not in accord with the weight of authorities, and that the question should be re-examined.

Counsel for the defendant calls attention to the fact that there there is no uniformity of practice in the federal courts with reference to the admission of such testimony, and argues that the only safe rule is to adopt and apply the statute of Massachusetts, Gen. Laws of Mass. c. 233, § 21, which, in so far as applicable to this case, provides that: "The conviction of a witness of a crime may be shown to affect his credibility, except as follows: First, The record of his conviction of a misdemeanor shall not be shown for such purpose after five years from the date on which sentence of said conviction was imposed, unless he has subsequently been convicted of a crime within five years of the time of his testifying."

Counsel argues that Rev. St. § 722 (U. S. Code, tit. 28, § 729 [28 USCA § 729]) authorizes the court, in the admission of records of previous convictions for the purpose of affecting the credibility of a witness, to apply the statute of the state within which the offense was committed. Rev. St. § 722 (28 USCA § 729) provides that: "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of chapter 3 of Title 8, and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the Constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

It is argued that, in the absence of congressional legislation regulating the admissibility of former records of convictions for crime for the purpose of affecting the credibility of a witness, resort must be had to Rev. St. § 722 (28 USCA § 729) and to current statutes of the state wherein the case is tried.

Never since the decision of United States v. Reid, 12 How. 361, 365, 13 L. Ed. 1023, has it been considered that the procedure in the federal courts governing the admission of evidence in criminal trials was so deficient as to make it necessary to resort to state statutes governing the admissibility of evidence. Rev. St. § 722 (28 USCA § 729) is a re-enactment and modification of the so-called Judiciary Act of 1789 (1 Stat. 73) and the Crimes Act of 1790 (1 Stat. 112). Chief Justice Taney in the Reid Case says:

"But neither of these acts make any express provision concerning the mode of conducting the trial after the jury are sworn. They do not prescribe any rule by which it is to be conducted, nor the testimony by which the guilt or innocence of the party is to be determined. Yet, as the courts of the United States were then organized, and clothed with jurisdiction in criminal cases, it is obvious that some certain and established rule upon this subject was necessary to enable the courts to administer the criminal jurisprudence of the United States. And it is equally obvious that it must have been the intention of Congress to refer them to some known and established rule, which was supposed to be so familiar and well understood in the trial by jury that legislation upon the subject would be deemed superfluous. This is necessarily to be implied from what these acts of Congress omit, as well as from what they contain.

"But this could not be the common law as it existed at the time of the emigration of the colonists, for the constitution had carefully abrogated one of its most important provisions in relation to testimony which the accused might offer. It could not be the rule which at that time prevailed in England, for England was then a foreign country, and her laws foreign laws. And the only known rule upon the subject which can be supposed to have been in the minds of the men who framed these acts of Congress, was that which was then in force in the respective States, and which they were accustomed to see in daily and familiar practice in the state courts. * * * The rules of evidence in criminal cases, are the rules which were in force in the respective States when the Judiciary Act of 1789 was passed. Congress may certainly

change it whenever they think proper, within the limits prescribed by the Constitution. But no law of a State made since 1789 can affect the mode of proceeding or the rules of evidence in criminal cases."

It is true that the main issue in the Reid Case related to the competency of a witness rather than to the relevancy of testimony that might be used to affect a witness' credibility. It is also true that the Reid Case has been modified by the case of Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406. By judicial construction the Rosen Case removes the bar which prevented a person previously convicted of a felony from testifying in a criminal action, but it is a long reach to hold that the Rosen Case warrants us in adopting current state statutes for the guidance of trials in criminal cases in the matter of impeaching or discrediting witnesses. Chief Justice Taney says: "It could not be supposed, without very plain words to show it, that Congress intended to give to the States the power of prescribing the rules of evidence in trials for offenses against the United States. For this construction would in effect place the criminal jurisprudence of one sovereignty under the control of another." This language was quoted with approval by Mr. Justice Gray in the case of Logan v. United States, 144 U. S. 263, 301, 12 S. Ct. 617, 36 L. Ed. 429. The reasoning of the above-quoted language is as sound now as it was in 1851 when announced.

In the case of McCoy v. United States (C. C. A.) 247 F. 861, 862, Evans, J., says: "The courts of the United States uniformly held from the time they were created that the rules of evidence in criminal cases were the rules which were in force in the respective states when the Judiciary Act of 1789 was passed. This proposition was first challenged in the Supreme Court of the United States some 60-odd years after the passage of the Judiciary Act of 1789, and the court adhered to the practice hitherto followed. United States v. Reid, 12 How. 361, 13 L. Ed. 1023."

And we might add that, so far as we are able to determine by an exhaustive examination, in the more than 60 years following the decision in the Reid Case there has not been a decision of a federal court of last resort squarely holding that in the exercise of its criminal jurisdiction it must be governed by current state statutes. United States v. Hall (D. C.) 53 F. 352; United States v. Hughes (D. C.) 175 F. 238; Maxey v. United States (C. C. A.) 207 F. 327; Denning v. United States (C. C. A.) 247 F. 463; Parker v. United States (C. C. A.) 3 F.(2d) 903.

It follows that we cannot adopt the defendant's contention that the admissibility of the testimony offered is to be controlled by the Massachusetts statutes above cited.

But it is argued that at common law convictions of crimes of lesser grade than felonies were admissible for the purpose of affecting the credibility of a witness, and that the tendency at the present time is to admit the record of the conviction of any crime whether a felony or a misdemeanor.

In the case of Merrill v. United States, 6 F.(2d) 120 (C. C. A. 9th, 1925), the defendant was charged with the unlawful possession of liquor. Evidence was admitted that he had been convicted of a misdemeanor for violating the liquor law of the state some 13 years before. Rudkin, J. says: "All the authorities agree that such testimony had no tendency to prove the charges contained in the present information, but it was not admitted for that purpose. It was admitted as a part of the cross-examination of the plaintiff in error, for the purpose of affecting his credibility as a witness. There is a conflict of authority upon this question in the different circuits, but the great weight of modern authority seems to sustain the ruling of the court below. (Citation of authorities.) In some jurisdictions the proof is limited to the conviction of crimes such as would disqualify the witness at common law, in others the crime must rise to the dignity of a felony, while in still others the rule extends to crimes of every degree, except perhaps the violation of municipal ordinances. The latter rule has prevailed in the state of Oregon from a very early date. State v. Bacon, 13 Or. 143 [9 P. 393, 57 Am. Rep. 8]."

The statement made by the learned judge that there is a conflict of authorities upon this question in the different circuits, but the great weight of authorities seems to sustain the ruling of the court below, has caused us to examine carefully the authorities cited to sustain the proposition.

As a leading case upon this point reference is made to the case of Fields et al. v. United States, 221 F. 242, 245 (C. C. A. 4th, 1915). In that case the defendants were charged and found guilty of illicit distilling. Evidence was admitted that they had been previously convicted of a similar offense. Knapp, J., says: "The trial court was careful to explain to the jury that this proof was admitted solely for its bearing upon the credibility of defendants as witnesses in their own

behalf, and we are clearly of opinion that it was competent for that purpose. To hold otherwise is to hold that fraud upon the government by violation of its revenue laws does not involve moral delinquency, which is the test of admissibility in such case, and we are not prepared to indorse the proposition that no reflection is passed upon the character of a witness by proof that he has been convicted of cheating the government."

The offense of illicit distilling was punishable by fine of not less than $1,000 or more than $5,000 and imprisonment of not less than six months nor more than two years. The offense was a felony according to the provisions of section 335 of the federal Penal Code (18 USCA § 541) which provides that: "All offenses which may be punished by death or imprisonment for a term exceeding one year, shall be deemed felonies. All other offenses shall be deemed misdemeanors."

In the case of Christopoulo v. United States, 230 F. 788 (C. C. A. 4th, 1916), the defendant was convicted of falsely representing himself a citizen of the United States. The defendant, a witness in his own behalf, was asked on cross-examination if he ran a "blind tiger," which implied that he sold liquor unlawfully. The ruling of the trial court admitting the question was sustained upon the ground that running a "blind tiger" involved *moral delinquency* and might be shown as affecting his credibility, citing the Fields Case, supra.

In the case of Tierney v. United States, 280 F. 322 (C. C. A. 4th, 1922), the defendant was convicted of carrying on the business of a retail liquor dealer without paying the tax. Evidence was introduced showing that he had been convicted of a similar offense upon the authority of the Fields Case.

In the case of Krashowitz v. United States, 282 F. 599, 601 (C. C. A. 4th, 1922), the defendant was convicted of unlawfully manufacturing intoxicating liquor, second offense. On cross-examination the defendant was asked about other and unrelated violations of the liquor law. The court in sustaining the conviction says: "This court has more than once held, that on the trial of an indictment for violating the liquor laws of the United States the defendant may be asked on cross-examination if he has not been guilty of other like offenses, on the issue of his credibility as a witness"—citing the Fields Case and others.

In the case of Nutter v. United States, 289 F. 484 (C. C. A. 4th, 1923), the defendant was convicted of selling morphine under the Harrison Anti-Narcotic Act. It was held that upon cross-examination the defendant might be asked if he had been previously convicted of selling morphine and whether or not he had not been convicted of a felony and served a sentence of 3 years in the penitentiary.

In Jones v. United States, 296 F. 632 (C. C. A. 4th, 1924), the defendant was convicted of illegal possession of intoxicating liquor. It was held that it was not error to permit cross-examination of defendant as to similar offenses as a test of his credibility, citing the Fields Case, supra.

The case of Parks v. United States, 297 F. 834 (C. C. A. 4th, 1924), is similar to the Jones Case, supra, and the testimony was held competent on the authority of the Fields Case.

The only cases cited in the Merrill Case outside of those determined in the Fourth Circuit are the following: United States v. Liddy, 2 F.(2d) 60 (D. C. Penn.), in which it was held that, as the defendant had on direct examination testified that he had never on previous occasions unlawfully sold intoxicating liquor, he thereby opened the door for cross-examination as to previous violations.

In Wheeler v. United States, 293 F. 588 (C. C. A. 5th, 1923), it is held that, where a defendant takes the stand in his own behalf, he may be asked on cross-examination for the purpose of impeachment if he had not previously been convicted of a felony.

In Gordon v. United States, 254 F. 53 (C. C. A. 5th, 1918), it is held that, where accused took the stand in his own behalf, he could be impeached like any other witness by proof of his prior conviction of an offense which the Penal Code, § 335 (18 USCA § 541), makes a felony; evidence being restricted to that purpose. His prior conviction was for setting up and operating a distillery.

In Neal v. United States, 1 F.(2d) 637, 639 (C. C. A. 8th, 1924), Phillips, J., quoting from Glover v. United States (C. C. A.) 147 F. 426, 8 Ann. Cas. 1184, says with reference to such testimony: "The general rule is that the crime must rise to the dignity of a felony or petit larceny."

Williams v. United States, 3 F.(2d) 129, 41 A. L. R. 328 (C. C. A. 8th, 1924), contains an exhaustive and learned opinion by Judge Kenyon on the issue whether or not it is necessary to prove prior convictions by the introduction of the record, and it is held that a witness may be asked on cross-examination, for the honest purpose of affecting his credi-

bility, whether he has been previously convicted of a felony. This case is cited by defendant's counsel in the case at bar. But, as the point decided is not in issue in the present action, it does not appear to be germane.

Furthermore, it is held in the case of Haussener v. United States, 4 F.(2d) 884 (C. C. A. 8th, 1925), that the first violation of the National Prohibition Act being neither a felony nor an infamous crime, cross-examination of the defendant touching his prior conviction of such offense is not permissible to impeach his credibility.

And in Lawrence v. United States (C. C. A.) 18 F.(2d) 407, there was a reversal because the trial judge admitted evidence of conviction of misdemeanor. This appears to be the last word on this point from the Eighth Circuit.

The case of Murray v. United States, 53 App. D. C. 119, 288 F. 1008, a case from the District of Columbia, the defendant was convicted of killing his wife. It was held no error to ask the defendant, a witness for himself, if he had not been convicted of five misdemeanors. This evidence was admitted under section 1067 of the District Code, which provides that: "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde."

The other case cited in Merrill v. United States is the case of MacKnight v. United States, 263 F. 832, 840 (1920), decided in this circuit. The defendant was convicted under section 215 of the Criminal Code (18 USCA § 335) of using the mails to defraud. The District Attorney was allowed to inquire of the defendant on cross-examination whether he was the same person who was tried and convicted of the crimes of forgery and obtaining money under false pretenses in the state of Ohio. Johnson, J., in sustaining the District Court, says: "The defendant had voluntarily offered himself as a witness in his own behalf, and evidence that he had been convicted of other crimes was clearly admissible as bearing upon his credibility." While this language is general and comprehensive, it seems to us that the learned judge must have had in mind the crimes of which the defendant had been convicted which carried penitentiary sentences in the state of Ohio where they were committed. We are led to this conclusion particularly because Judge Johnson 4 years later concurred in the opinion of Judge Bingham in the Solomon case.

The only cases cited in the Merrill Case in which it is held that the credibility of a witness may be attacked by the introduction of evidence of former convictions of an offense of less degree than a felony are the Christopoulo, Krashowitz, Jones, and Parks Cases all in the fourth circuit enlarging and extending the decision in the Fields Case from a crime involving "moral delinquency" carrying a penitentiary sentence to the introduction of misdemeanors. See, also: Mansbach v. United States (C. C. A.) 11 F. (2d) 221, and Weiner v. United States (C. C. A.) 20 F.(2d) 522, both cases from the Third Circuit.

So far as ascertained, the Fifth and Eighth Circuits hold that such evidence is limited to felonies. In the Merrill Case the court recognizes that there is a conflict of authority upon the question in different circuits. Judge Rudkin, writing the opinion, says: "In some jurisdictions the proof is limited to the conviction of crimes such as would disqualify the witness at common law, in others the crime must rise to the dignity of a felony, while in still others the rule extends to crimes of every degree, except perhaps the violation of municipal ordinances. The latter rule has prevailed in the state of Oregon from a very early day. State v. Bacon, 13 Or. 143 [9 P. 393, 57 Am. Rep. 8]."

The Merrill Case was an appeal from the District Court of Oregon, and it may properly be classed with those cases holding that the question must be determined by the state law in the jurisdiction where the trial is held as it existed at the time the state was admitted into the union. It is so stated in United States v. Fay (D. C.) 19 F.(2d) 620, page 621; also see opinion of Judge Van Devanter in the case of Withaup v. United States (C. C. A.) 127 F. 530; Logan v. United States, 144 U. S. 263, 303, 12 S. Ct. 617, 36 L. Ed. 429; Ball v. United States (C. C. A.) 147 F. 32; Louie Ding v. United States (C. C. A.) 247 F. 12; McCoy v. United States (C. C. A.) 247 F. 861.

The study of the foregoing case discloses no compelling reason why we should depart from what appears to be a well-established principle that rules of evidence in criminal trials are governed by the common law as construed and practiced in the states when the Judiciary Act of 1789 was passed (1 Stat. 73).

Counsel for the defendant have referred us to Castlemaine Trial, 7 How. State Trials, 1067, and other English authorities as tending to show what the common law was in England prior to its adoption in this coun-

try; but as said in the case of United States v. Reid, supra, the test is not the English law but the common law of the states as interpreted and practiced by their courts in 1789.

In the case of Utley v. Merrick, 11 Metc. (Mass.) 302, the testimony of a witness was objected to on the ground that he had been adjudged guilty and sentenced for obtaining goods under false pretences. The objection was overruled and the witness was admitted to testify. Record evidence was then offered of his conviction for the purpose of affecting his credibility. The court in passing upon the second objection said: "The remaining question is, whether the record of the conviction and sentence of the witness ought to have been admitted to impeach his credit. * * * The witness was only convicted of a misdemeanor, which does not disqualify him to testify, and ought not to be admitted to impeach his credit, any more than the conviction of any other misdemeanor."

This appears to have been the state of the law in Massachusetts prior to the passage of any statute governing the admission of such evidence. It is substantially the basis of the opinion in the Solomon Case which was applied by the District Judge in his ruling upon the evidence offered in the case at bar.

One further point seems to merit consideration, namely, Is the rule of evidence in any way changed or modified by Acts of Congress passed subsequent to 1789?

In 40 Cyc. 2607, it is said: "In general, the fact that a witness has been convicted of crime may be brought out as bearing on his credibility, where the crime amounts to a felony, or is infamous in its nature, and involves moral turpitude."

As has been said in numerous cases, there has been great difficulty among judges and text-writers in stating any satisfactory rule for determining definitely what are the crimes, conviction of which disqualifies a witness from testifying. Convictions of treason and felonies would disqualify at common law, but as to other crimes it has been said that they must be in their nature infamous, and this has been interpreted to include only those crimes which tend to the perversion of justice in the courts by the introduction of falsehood and fraud. Little v. Gibson, 39 N. H. 505; State v. Archer, 54 N. H. 465.

It does not necessarily follow because the punishment affixed to an offense is infamous that the offense is considered infamous or that it was thereby raised to the grade of a felony. The word "felony" was used at common law to denote an offense which occasioned a for-feiture of the land or goods of the offender or to which capital or other punishments might be superadded according to the degree of guilt. 4 Bl. Com. 94, 95.

In Mackin v. United States, 117 U. S. 348, 6 S. Ct. 777, 29 L. Ed. 909, it is held that a crime punishable by imprisonment in the state prison or penitentiary with or without hard labor is an infamous crime as known to the federal Constitution. See, also, Bannon v. United States, 156 U. S. 464, 15 S. Ct. 467, 39 L.·Ed. 494.

Since the passage of Criminal Code, § 335, on March 4, 1909 (35 Stat. 1152 [18 US CA § 541]), making all offenses punishable by a term exceeding one year felonies, we believe that in the general opinion of the public, from which jurors are drawn, the conviction of an offense punishable by a penitentiary sentence, whether it were a felony at common law or is made so by statute, is considered infamous and a matter which jurors may well regard as of importance as bearing upon a witness' credibility.

On account of the difficulty at this late date of determining just what offenses were infamous under the interpretation of the common law as practiced in 1789, it may fairly be held that Congress having defined what shall be considered a felony, the rules of evidence determining what classes of crimes may be used to impeach a witness' credibility has been enlarged to cover all felonies. This principle is not without precedent. Gordon v. United States (C. C. A.) 254 F. 53; Fisher v. United States (C. C. A.) 8 F.(2d) 978. This furnished a rule easy of application and bars the harassing of honest witnesses by interrogating them as to whether or not they have been convicted of petty offenses like violation of state speed laws, fish and game laws, and failing to pay a dog tax.

We therefore hold that the record of a conviction for a crime of the degree of a felony, common-law or statutory, may be introduced in evidence as affecting the credibility of a witness. Convictions of misdemeanors of the character herein questioned may not be so used.

Other assignments of error have not been discussed and are not considered.

The judgment of the District Court is affirmed.

ANDERSON, Circuit Judge (dissenting). Sitting as District Court in the Solomon Case in 1923, I reached the conclusions that the question of the admissibility of Solomon's conviction for keeping a house of ill fame, to

212

discredit his testimony in his own behalf, was to be determined under the federal law; that it was admissible, although the offense was but a misdemeanor under Massachusetts law; and that the Massachusetts statutes excluding such conviction for a misdemeanor, if not within 5 years, had no bearing on the question in the federal court. Logan v. United States, 144 U. S. 263, 298, 300, 303, 12 S. Ct. 617, 36 L. Ed. 429; United States v. Reid, 12 How. 361, 365, 13 L. Ed. 1023; Rosen v. United States, 245 U. S. 467, 38 S. Ct. 148, 62 L. Ed. 406. I have never seen and do not now see any reason to change the views then formed. I think the great weight of authority is that conviction of a prior crime, whether called a misdemeanor or a felony, is, under federal criminal procedure, competent to affect the credibility of a witness. 2 Wigmore Ev. § 987 (4), 16 C. J. p. 55. Under Federal law, crimes are what, and only what, specific statutes make them. Prior to the Act of March 4, 1909, 35 Stat. 1152, 18 US CA § 541, there was no federal definition of felony. By that statute all offenses punishable by imprisonment exceeding 1 year were made felonies. Nevertheless, under the Act of February 5, 1917, 39 Stat. 880, 8 USCA § 144, illegal importation of aliens was by the express terms of the statute made a misdemeanor, although punishable by imprisonment not exceeding 5 years. Solomon's conviction of the offense of keeping a house of ill fame plainly involved more moral turpitude than many offenses falling under the Federal definition of felony. Moreover, it was, under the Massachusetts statute (Gen. Laws of Mass. c. 233, § 21), although made a misdemeanor, subject to a penalty of imprisonment not exceeding two years, and therefore fell within the Act of March 4, 1909, supra, as a felony under the Federal law. Compare In re Humphrey, 64 Cal. App. 572, 222 P. 366. Obviously the real reason for admitting evidence of conviction of crime is because it is, in general, a short and easy way of showing such a state of moral delinquency as to discredit the veracity of the witness. Moral turpitude is the essence; the weight of a prior conviction, either of misdemeanor or of felony, depends mainly on the jury's view of the moral turpitude of the crime of which the witness was convicted.

Without now reviewing the authorities which are mostly stated in Judge Kenyon's learned opinion in Williams v. United States (C. C. A.) 3 F. (2d) 129, 41 A. L. R. 328, and in Merrill v. United States (C. C. A.) 6 F. (2d) 120, I cannot adopt the view that "the record of a conviction for a crime of the degree of a felony, at common law or statutory, may be introduced in evidence as affecting the credibility of a witness. Convictions of misdemeanors may not be so used." But I repeat that Solomon's conviction was of an offense both involving moral turpitude and made a felony under the statute of 1909, supra; and I think conviction of any crime of any degree is, in federal criminal trials, admissible to discredit a witness.

In this case I think the ruling of the trial court may be regarded as not a reversible error. The evidence of prior conviction for selling liquor was put before the jury. But the court instructed the jury to disregard it. This would have but little practical effect. Moreover, prior conviction of selling liquor is not generally regarded as involving such moral turpitude as keeping a house of ill fame.

I concur, therefore, in affirming the judgment under the general authority of the amendment of 1919, of section 269 of the Judicial Code (28 USCA § 391).