ROSEN ET AL. *v.* UNITED STATES.

PAKAS *v.* UNITED STATES.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 365, 438.  Argued December 12, 1917.—Decided January 7, 1918.

Under the modern rule, supported both by legislation and by the very great weight of judicial authority, all persons of competent understanding are permitted to testify to relevant facts within their knowledge, and the former common-law rule disqualifying witnesses convicted of crime will no longer be followed, but such conviction will be given due consideration in determining the credibility and weight of their testimony.

In a criminal trial in a United States District Court in New York, a witness, previously sentenced and imprisoned under the law of that State for the crime of forgery in the second degree, was competent to testify for the United States against his co-defendants, irrespective of whether he would have been disqualified. by the rules of competency as they were in New York at the date of the Judiciary Act of 1789. *United States* v. *Reid,* 12 How. 361, is to this extent disapproved.

Under Rev. Stats., § 161, which authorizes the head of each Department "to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the . . . property appertaining to it,"

and under and in supplement of § 194 of the Criminal Code, the Postmaster General by a general order may designate as letter boxes for the receipt or delivery of mail matter all letter boxes and other receptacles which are so used or intended on city delivery or other mail routes; a privately owned box coming within such designation is an "authorized depository for mail matter" within the meaning of the penal section, and a theft of letters from such a box is punishable as the section prescribes. So *held* where the letters were stolen from boxes placed by tenants for receipt of mail in the halls of buildings in which they had their places of business. The boxes bore the names· of the owners and were not locked. Mail· was deposited in them by the carriers, but not collected from them.

Mail matter which has not reached the manual possession of the addressee, but lies in a private letter box, designated as an authorized depository under the federal law, where it has been placed by the delivering carrier, is still subject to the protective power of the Government.

237 Fed. Rep. 810; 240 Fed. Rep. 350, affirmed.

THE cases are stated in the opinion.

*Mr. Terence J. McManus*, with whom *Mr. Meier Steinbrink* was on the briefs, for petitioners.

· *Mr. Assistant Attorney General Fitts* for the United States.

MR. JUSTICE CLARKE delivered the opinion of the court.

These two cases present precisely the same questions for decision. They were argued and will be decided together.

In No. 365 Rosen and Wagner were indicted in the District Court of the United States for the Eastern District of New York with one Broder for conspiring to buy and receive certain checks and letters which had been stolen from "duly authorized depositories for mail matter of the United States," and which were known to the accused to have been so stolen. Broder pleaded guilty, and when he was afterwards called as a witness for the

Government the objection was made that he was not competent to testify for the reason that, as was admitted by the Government, he had theretofore pleaded guilty to the crime of forgery in the second degree, in the Court of General Sessions, in the County and State of New York, had been sentenced to imprisonment, and had served his sentence. The objection was overruled and Broder was permitted to testify. This ruling was assigned as error in the Circuit Court of Appeals, where it was affirmed, and it is now assigned as error in this court.

The second claim of error is that the trial court erred in refusing the motion of the defendants to direct a verdict of acquittal on the ground that no crime had been committed, for the reason that the box from which the mail was taken was not "an authorized depository of the mail," and that it was taken therefrom after it had left the possession of the Government.

Broder testified, and it was not disputed, that the letters were stolen from boxes placed by tenants for the receipt of mail in the halls of buildings in which they had their places of business. The boxes bore the names of the owners and were not locked, and while mail was deposited in them by the carriers no mail was collected from them.

In No. 438 Pakas and Broder, the same Broder as in No. 365, were jointly indict d for buying and receiving three designated checks, kno ring the same to have been stolen from letters which had been deposited in the United States mail for delivery by the Post Office establishment of the United States. The same questions are presented, raised in the same manner, as in No. 365.

For the validity of the claim that Broder was disqualified as a witness by his sentence for the crime of forgery, the plaintiffs in error rely upon *United States* v. *Reid*, 12 How. 361, decided in 1851. In that case it was

held that the competency of witnesses in criminal trials in United States courts must be determined by the rules of evidence which were in force in the respective States when the Judiciary Act of 1789 was passed, and the argument in this case is, that by the common law as it was administered in New York in 1789 a person found guilty of forgery and sentenced was thereby rendered incompetent as a witness until pardoned, and that, therefore, the objection to Broder should have been sustained.

While the decision in *United States* v. *Reid, supra*, has not been specifically overruled, its authority must be regarded as seriously shaken by the decisions in *Logan* v. *United States*, 144 U. S. 263–301, and in *Benson* v. *United States*, 146 U. S. 325.

The *Benson Case* differed from the *Reid Case* only in that in the former the witness whose competency was objected to was called by the Government while in the latter he was called by the defendant. The testimony of the witness was admitted in the one case but it was rejected in the other, and both judgments were affirmed by this court—however forty years had intervened between the two trials. In the *Benson Case*, decided in 1892, this court, after determining that the *Reid Case* was not decisive of it, proceeded to examine the question then before it "in the light of general authority and sound reason," and after pointing out the great change in the preceding fifty years in the disposition of courts to hear witnesses rather than to exclude them, a change which was "wrought partially by legislation and partially by judicial construction," and how "the merely technical barriers which excluded witnesses from the stand had been removed," proceeded to dispose of the case quite without reference to the common-law practice, which it was claimed should rule it.

Accepting as we do the authority of the later, the *Benson Case*, rather than that of the earlier decision, we

shall dispose of the first question in this case, "in the light of general authority and sound reason.".

In the almost twenty years which have elapsed since the decision of the *Benson Case*, the disposition of courts and of legislative bodies to remove disabilities from witnesses has continued, as that decision shows it had been going forward before, under dominance of the conviction of our time that the truth is more likely to be arrived at by hearing the testimony of all persons of competent understanding who may seem to have knowledge of the facts involved in a case, leaving the credit and weight of . such testimony to be determined by the jury or by the court, rather than by rejecting witnesses as incompetent, with the result that this principle has come to be widely, almost universally, accepted in this country and in Great Britain.

Since the decision in the *Benson Case* we have significant evidence of the trend of congressional opinion upon this subject in the removal of the disability of witnesses convicted of perjury, Rev. Stats., § 5392, by the enactment of the Federal Criminal Code in 1909 with this provision omitted and § 5392 repealed. This is significant, because the disability to testify, of persons convicted of perjury, survived in some jurisdictions much longer than many of the other common-law disabilities, for the reason that the offense concerns directly the giving of testimony in a court of justice, and conviction of it was accepted as showing a greater disregard for the truth than it was thought should be implied from a conviction of other crime.

Satisfied as we are that the legislation and the very great weight of judicial authority which have developed in support of this modern rule, especially as applied to the competency of witnesses convicted of crime, proceed upon sound principle, we conclude that the dead hand of the common-law rule of 1789 should no longer be applied to such cases as we have here, and that the ruling

of the lower courts on this first claim of error should be approved.

There remains the claim that the boxes from which the letters were stolen were not "authorized depositories for mail matter," and that, therefore, the stealing of the letters from them did not violate § 194 of the Federal Criminal Code, of March 4, 1909, under which petitioners were indicted.

Section 194 provides that:

"Whoever shall steal, take, or abstract  .  .  .  from  .  .  .  any  .  .  .  *authorized depository for mail matter*  .  .  .  any  letter  .  .  .  or shall abstract or remove from any such letter  .  .  .  any article," etc., shall be fined, etc.

Section 161 of the Revised Statutes of the United States provides:

"The head of each Department is authorized to prescribe regulations, not inconsistent with law, for the government of his Department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the  .  .  .  property appertaining to it."

A regulation promulgated as an order of the Post Office Department prior to the dates on which the defendants are charged with having committed the crime for which they were indicted was introduced in evidence and reads as follows:

"Any letter box or other receptacle intended or used for the receipt or delivery of mail matter on any city delivery route  .  .  .  or other mail route is hereby designated a letter box for the receipt or delivery of mail matter, within the meaning of the Act of March 4, 1909."

This regulation was obviously intended to supplement § 194 of the Criminal Code, under which the defendants were indicted, by supplying the detail which Congress contemplated should be so supplied when it left unde-

fined "or other authorized depository for mail matter." Such a regulation, if fairly within the scope of the authority given by Congress to make it, has the force and effect of law, and violations of it are punishable under the act which it supplements.

That § 194 contemplates that its general language shall be made definite by such order is plain, and that the order is well within the authority conferred upon the Postmaster General by Rev. Stats., § 161, cannot be doubted, prescribing, as it does, a rule for the conduct of carriers in the discharge of their duties in the delivery of mail and for safely preserving the property committed to the care of the Department until it shall reach the persons to whom it is addressed. This satisfies the law. *Searight* v. *Stokes,* 3 How. 151–169; *Ex parte Reed,* 100 U. S. 13, 22; *United States* v. *Grimaud,* 220 U. S. 506; *Light* v. *United States,* 220 U. S. 523; *Utah Power & Light Co.* v. *United States,* 243 U. S. 389.

The suggestion that when the mail was deposited in a privately owned box it passed out of the custody of the Government and beyond the protection of the law does not deserve extended notice. The letters which were stolen did not reach the manual possession of the persons to whom they were addressed, but were taken from an authorized depository over which the act of Congress, by its express terms, extended its protection until its function had been served.

It results that the judgments of the Circuit Court of Appeals must be

*Affirmed.*

MR. JUSTICE VAN DEVANTER and MR. JUSTICE MC-REYNOLDS dissent from so much of the opinion as departs from the rule settled in *United States* v. *Reid* and *Logan* v. *United States,* which they think is in no way modified by what actually was decided in *Benson* v. *United States.*