Berthold GOODMAN, Appellant,

v.

UNITED STATES of America.

Melvin CROWN, Appellant,

v.

UNITED STATES of America.

E. F. SMITH, Appellant,

v.

UNITED STATES of America.

Nos. 16227, 16232, and 16233.

United States Court of Appeals
Eighth Circuit.

Jan. 20, 1960.

Patrick A. Conmy, Bismarck, N. D., for appellant Goodman.

John M. Bowlus, Chicago, Ill., for appellant Crown.

Philip Neville, Minneapolis, Minn., for appellant Smith.

Robert Vogel, U. S. Atty., Fargo, N. D., for appellee.

Before GARDNER, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Berthold Goodman, Melvin Crown and E. F. Smith, appellants, together with David Schiff, William R. Carroll and Louis Levine, were charged in a 42-count indictment with violations of 18 U.S.C.A. § 1341, commonly referred to as the Mail Fraud Statute, and with violations of 18 U.S.C.A. § 1343, known as the Fraud by Wire Statute. Each count of the indictment charged a like scheme or artifice to defraud with each count alleging in the execution of the scheme a separate and different mailing or receipt of a letter or postcard in North Dakota and/or the use in that state of interstate wire. The case against William R. Carroll was dismissed on motion of the government. Defendants Schiff and Levine entered pleas of guilty prior to trial and were placed on probation. The case against appellants Goodman, Crown and Smith went to trial before a jury on April 14, 1959, and resulted, on May 1, 1959, in a verdict of guilty against each of them on each count of the indictment.

On appeal this court must take that view of the evidence most favorable to sustaining the jury verdict. So viewed, the record indicates the following: The government alleged and substantial evidence fairly tended to show that appellants Goodman and Crown were co-partners in the operation of a business known as the Interstate Exchange Company, hereafter referred to as Interstate. Goodman was in charge of the company's office in Chicago, Illinois, and at times worked also as a salesman. The other defendants were solely salesmen for Interstate. The gravamen of the indictment was that the defendants engaged in a scheme to defraud persons in the State of North Dakota and elsewhere of money and other property. The execution of the scheme consisted of mailing to owners of small businesses circular letters representing that Interstate could find purchasers for the selected enterprises and urging the recipients to return an enclosed card as an indication that they would be willing to sell under favorable terms. The letters also claimed that representatives of Interstate called upon owners only after definite purchasers had been found for their particular businesses. After receiving a solicited reply, one of the defendants would call upon an owner and, sometimes after long distance calls to Goodman in Chicago made from the business premises supposedly to verify the fact that Interstate had a specific purchaser for the enterprise who had seen the property and had deposited a sum of money with it as evidence of good faith which sum would be forfeited if the purchaser failed to complete the deal, induce him to enter into a contract with Interstate for the sale of the business and to make an advance payment to it, which payment was allegedly only for the purpose of insuring the availability of the property at the time the sale was to be consummated and which was to be returned to the owner if the transaction were not closed within a specified period. The evidence, however, established that Interstate was not engaged in the business of securing purchasers for small enterprises; that its representatives did not have prospective buyers for the properties when they called upon the owners; that the calls to Chicago were made solely for the purpose of inducing the owners to enter into the contracts with Interstate and thereafter make a down-payment for its services; and that the defendants did not intend to effect the sale or return the down-payment, nor in fact did they do so in any of the charged instances.

Appellants Goodman, Crown and Smith have prosecuted their appeals to this court separately, each alleging multiple errors. They were, however, indicted jointly and were tried and convicted before the same jury. Their appeals, consequently, will be considered in this single opinion with separate reference being made to each appellant where necessary or expedient.

■ All three of the appellants urge as error:

"Failure of the court to instruct on the necessary elements of proof required to establish a 'scheme to defraud' and failure of the court to define what constitutes a 'scheme to defraud'."

The record, however, reveals that none of the appellants made any specific request for such an instruction. That being the case, they may not now question the court's failure to so instruct. Louisville & Nashville R. Co. v. Rochelle, 6 Cir., 1958, 252 F.2d 730, 738; Comins v. Scrivener, 10 Cir., 1954, 214 F.2d 810, 815, 46 A.L.R.2d 1; Witt v. Merrill, 4 Cir., 1954, 210 F.2d 132, 134; Metropolitan Life Ins. Co. v. Talbot, 5 Cir., 1953, 205 F.2d 529, 533; Seeraty v. Philadelphia Coca-Cola Bottling Co., 3 Cir., 1952, 198 F.2d 264, 265. We have, however, considered in detail the instructions given and find them to have been understandable, adequate and correct.

■ Appellants Goodman and Crown next claim error in the trial court's refusal to give their Requested Instruction No. 11. The record discloses that representatives of the Federal Trade Commission made demand upon Interstate for its business records, which request was complied with despite the fact that no subpoena therefor was ever issued. Subsequently, proceedings were instituted by the Commission which led to a cease and desist order and the consequent ultimate cessation of business by Interstate. It does not appear, however, that the Federal Trade Commission had any part in the prosecution of this case nor that any of the books or records furnished to them were used as evidence herein, although, undoubtedly, the exhibits used in the instant case were duplicates of the material given the Commission but obtained from different sources.

15 U.S.C.A. § 49 provides:

"No person shall be excused from attending and testifying or from producing documentary evidence be-fore the commission or in obedience to the subpoena of the commission on the ground or for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to (in)criminate him or subject him to a penalty or forfeiture. But no natural person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify, or produce evidence, documentary or otherwise, before the commission *in obedience to a subpoena issued by it: Provided,* That no natural person so testifying shall be exempt from prosecution and punishment for perjury committed in so testifying." (Emphasis supplied.)

Appellants' Requested Instruction No. 11 was as follows:

"You are instructed that if you believe from the evidence that the defendant furnished evidentiary material concerning the same matters involved in the indictment in this case, to the Federal Trade Commission, and that such evidentiary material was furnished under compulsion and under any element of fear of prosecution or threat of litigation then and in that event you are instructed that the defendants are immune from prosecution concerning such matters and they are entitled to an acquittal, and in that event it is your sworn duty to return a verdict of 'not guilty'. See [United States v. Pardue, D.C.] 294 F. 543; [United States v. Frontier Asthma, D.C.] 69 F.Supp. 994; also Section 49 of Title 15, U.S.C.A."

The argument in support of the seemingly untenable requested instruction was that, while appellants gave no testimony nor produced any records for the Federal Trade Commission in response to a subpoena:

" * * * it is a matter of common knowledge that people being investigated by a Government agen-

cy feel compelled to turn over their books and records and to furnish information orally through fear of the power of the Government and in seeking to avoid any color of or attempt at deception. * * *

" * * * that the element of compulsion should be the guiding factor under the law as to whether or not immunity should be recognized and granted."

The question raised by this claim of error was settled by the Supreme Court of the United States in Sherwin v. United States, 1925, 268 U.S. 369, 373, 45 S. Ct. 517, 519, 69 L.Ed. 1001, where, dealing with an identical situation, the court said:

"The immediate question here is whether, under this particular immunity provision, the mere furnishing of information of whatever character creates an immunity which bars the prosecution. Compare Tucker v. United States, 151 U.S. 164, 167, 169, 14 S.Ct. 299, 38 L.Ed. 112.

"The question is said to be one of statutory construction. But, upon the facts stated, it is clear that there was no basis for the plea of immunity. The act grants immunity only when the person testifies or produces evidence 'before the commission in obedience to a subpoena issued by it.' Sherwin and Schwartz did nothing in obedience to a subpoena. None was issued."

See also, this court's opinion in Pandolfo v. Biddle, 8 Cir., 1925, 8 F.2d 142. No error was therefore committed in the refusal to give appellants' Requested Instruction.

■ It is the further contention of appellants Goodman and Smith that error existed in the receipt of evidence as to other offenses. The record indicates that the prosecution introduced proof of similar fraudulent acts and schemes occurring in North Dakota and other states which were not specifically covered in the indictment. Appellants admit that there are exceptions to the general rule that in a criminal prosecution proof which shows or tends to show that the accused is guilty of other crimes and offenses, even though they are of the same nature as the offense charged, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. They claim, however, that the introduction of such evidence here " * * * served no other purpose than the villification of the defendants and its reception was in no way limited; * * *." We disagree. The evidence of other offenses introduced here tended to establish an essential element of the scheme or artifice charged— that is, the necessary intent—and as such was clearly admissible. United States v. Schaffer, 2 Cir., 1959, 266 F.2d 435, 442; Grant v. United States, 6 Cir., 1958, 255 F.2d 341, 342, certiorari denied 358 U.S. 828, 79 S.Ct. 48, 3 L.Ed.2d 68; Harper v. United States, 1956, 99 U.S. App.D.C. 324, 239 F.2d 945, 946. The trial court very carefully charged the jury with respect to the alleged objectionable evidence:

"The defendants are now on trial only upon the charges contained in the counts submitted to you and no others. The Government presented evidence as to claimed transactions claimed by it to be similar to those upon which those counts are based. Evidence as to such other transactions is to be considered by you only for what bearing, if any, it may have as to the knowledge, intent, motive or purpose of any of the defendants and as to the existence, if any, of a commonly-devised scheme to defraud or to obtain money by means of false or fraudulent pretenses, representations or promises, and for no other purposes."

No error was committed in receipt of such evidence.

It is contended by all appellants that error was committed in admitting the testimony of a co-defendant, Louis Levine, who previous to trial had entered a plea of guilty and who had been placed

on probation. Levine was called as a witness and, after identifying himself as to name, residence, occupation, etc., was asked:

"Q. Were you at one time employed by Interstate Exchange Company? A. Yes, I was.

"Q. Are you the same Louis Levine that was—that is one of the defendants in this case? A. Yes, sir.

"Q. And has that matter been disposed of, so far as you're concerned? A. Yes, sir.

"Q. *And how was it disposed of?* A. *I pled guilty in this Court and I'm on three years probation.*

"Q. When was your employment with Interstate Exchange Company? A. Until the—the early part of February to towards the end of April.

"Q. *Of what year?* A. 1957.

"Q. Had you known either Mr. Goodman or Mr. Crown prior to that time? A. I knew Mr. Crown.

"Q. Where did you learn to know him? A. In Cheyenne, Wyoming.

"Q. And how long had you known him? A. I met Mr. Crown sometime in 1950, the early part.

"Q. Was he in business in Cheyenne at that time? A. Yes, he was. He was in the camera business.

"Q. All right. How were you contacted in regard to employment by Interstate Exchange? A. By telephone——

"Mr. Conmy: One moment please. If the Court please, I object to the particular question and I want to state an objection, not only to the question, but to any examination of this witness. *I waited until it appeared of record that the witness was a co-defendant and that it appeared of record that he has been put on probation pursuant to his plea.* It is my position that it is completely improper and prejudicial to permit an alleged co-participant or co-conspirator or co-schemer, and one who is charged by the Government with the same offenses that the defendants I represent are charged, to testify at all on the basis that in such crime or such an offense or offenses, the actions and the words of one are attributed to all and that it is in violation of that principle of constitutional law which provides that no man shall be compelled to testify against himself. It is my position in making the objection that to permit the Government to call as their witness an alleged participant and a named defendant in the same indictment is a violation as to the other defendants in an alleged offense of this nature where they would charge all with what each and every one does. To permit him to testify is a direct, a practical and an actual violation of that constitutional provision which prevents the compelling of a party to testify against himself.

"I wanted to make my position clear and, while the objection is made to the particular question, if it is overruled, to avoid repeated objections, I would like it clearly understood that it is made to any and all examination of this witness by the Government.

"The Court: Is there any further objection? Mr. Murray: No. The Court is looking at me so—I have nothing to say.

"The Court: The objection is overruled.

"Q. (Mr. Vogel continuing) I believe the question was how you were first contacted in regard to employment by Interstate Exchange Company? A. By telephone.

"Q. And from whom did you get that call? A. Mr. Crown." (All emphasis supplied.)

■ It is first urged that "* * * to permit a witness to tell a jury that he is a co-defendant who pleaded guilty is

highly prejudicial to the other co-defendants who have elected to invoke their constitutional right to trial by jury." The information that Levine had entered a plea of guilty and had been placed on three years' probation was solicited and received without any objection whatsoever. No motion was made to strike and appellants may not here for the first time predicate error on a matter to which the trial court's attention was not directed. Harris v. United States, 8 Cir., 1957, 248 F.2d 196, affirmed 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597; Canton v. United States, 8 Cir., 1955, 226 F.2d 313, certiorari denied 350 U.S. 965, 76 S.Ct. 433, 100 L.Ed. 838; Gilby v. Travelers Insurance Co., 8 Cir., 1957, 248 F.2d 794, 797; Green v. Dingman, 8 Cir., 1956, 234 F. 2d 547, 550.

■ It is secondly contended, and the only objection made to the examination of Levine was directed thereto, that the admission of the testimony of a co-defendant violated the appellants' privilege against self-incrimination. They urge that to permit a co-defendant to testify " * * * in a group crime where the acts and words of any one are made the acts and words of all is a direct, a practical and an actual violation of the right against self-incrimination." No courts, however, have so held and we are not prepared to cause rupture with longstanding precedent by so ruling. Rosen v. United States, 1918, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406; Caminetti v. United States, 1917, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; McCormick v. United States, 8 Cir., 1925, 9 F.2d 237; Greenberg v. United States, 8 Cir., 1924, 297 F. 45. Accordingly, we conclude that the trial court committed no error in that respect.

■ The appellant Crown contends that it was error to permit the government on cross-examination of appellants' character witness to inquire about a previous conviction of the appellant Goodman. Appellant Goodman presented Milroy R. Blowitz as a character witness who testified that Goodman's reputation for truth and veracity was excellent. On cross examination he was asked:

"Q. Mr. Blowitz, in connection with your knowledge of Mr. Goodman's reputation, had you heard that he had previously been convicted of conspiracy in 1944? A. No, sir."

Counsel for Goodman then objected and moved for a mistrial on the ground that "such question is improper, prejudicial, without foundation entirely." Thereupon, the court met in chambers with counsel and the appellants and ascertained to its satisfaction that appellant Goodman had been so convicted. The objection was then overruled. In so doing, the trial court followed the procedure as set forth in United States v. Alker, 1958, 3 Cir., 260 F.2d 135, 149–152. Appellant attempts to distinguish the Alker case by pointing out that the question here was, " * * * *had* you heard that he had previously been convicted * * *", whereas in the Alker case the inquiry was " * * * *have* you heard that the defendant * * *." In spite of counsel's strenuous argument, we find the distinction to be without substance.

■■ Error is also urged in the government's failure to produce a certified record of Goodman's conviction. This was a matter resting within the sound discretion of the trial court, and the court having, out of the presence of the jury, satisfied itself, on the basis of the statement of the United States Attorney and the admission of the defendant Goodman himself, of the existence of the 1944 conviction certainly did not abuse such discretion. It is likewise contended that the conviction was too remote and that the crime of conspiracy is too vague without some further explanation to the jury as to the nature of the particular offense. We do not agree and, in any event, under the principles set forth in United States v. Alker, supra, and Michelson v. United States, 1948, 335 U. S. 469, 69 S.Ct. 213, 93 L.Ed. 168, those were matters resting in the here unabused discretion of the trial court. In

conclusion, the trial judge " * * * satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box." Michelson v. United States, supra, 335 U.S. at page 481, 69 S.Ct. at page 221. Additionally, he carefully and properly instructed the jury on the limited function of the allegedly objectionable examination. We, therefore, find no error in this regard.

■■■■ The appellant Crown asserts that the District Court committed error when it failed on its own motion to declare a mistrial after it had become apparent that the interests of the co-defendants were adverse and hostile to one another. Crown, however, made no motion for a mistrial nor for a separate trial at the outset thereof. Admittedly, the right to separate trials is a matter that rests within the sound discretion of the trial court. Kansas City Star v. United States, 8 Cir., 1957, 240 F.2d 643, 651–652, certiorari denied 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438. The mere fact that hostility arose among the co-defendants during the subsequent progress of the trial was no valid ground for declaring a mistrial and ordering separate trials. Furthermore, it should be pointed out that the trial court may not be led into error for failing to declare a mistrial on its own motion when able and experienced counsel think so little of the matter that they do not so move at the time.

Appellants Goodman and Smith attempt to predicate error on what they term "misconduct of counsel" in presenting argument to the jury. We have carefully examined the argument of the United States Attorney and particularly the passages objected to by counsel. We find therein nothing improper.

■■■ We have considered all claims of error raised by the three appellants and find them to be without merit. The voluminous record herein presents overwhelming evidence of the appellants' guilt. Their rights were fully protected throughout the long but carefully conducted trial. The judgments of conviction are accordingly affirmed.