**William D. JACKSON, Petitioner,**

v.

**C. C. PEYTON, Warden, State Penitentiary, Virginia, Respondent.**

**Civ. A. No. 68–C–117–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Sept. 16, 1969.

S. Strother Smith III, Abingdon, Va., for petitioner.

Edward J. White, Asst. Atty. Gen., Commonwealth of Virginia, Richmond, Va., for respondent.

## ORDER DISMISSING PETITION

HAYES, District Judge.

This is a habeas corpus proceeding to vacate a sentence of fifty years in the state prison on his plea of guilty to murder in the first degree entered February 1, 1965, for the murder of Mrs. Susie Viers, on September 9, 1964, and for the murder of her sister, Mrs. Louisa Owens, at the same time and place, to which he also pleaded guilty and received another sentence of fifty years, both sentences to run concurrently.

On February 2nd, 1967, petitioner filed a habeas corpus proceeding in the state court at Richmond to set aside and vacate both judgments on the alleged ground that the pleas of guilty were the product of coercion and in violation of his constitutional rights. A hearing was held in the circuit court of Buchanan County, Virginia, by Raymond J. Boyd, Judge, on July 19, 1967. After hearing the evidence, the court, on September 6, 1967, found that petitioner clearly failed to sustain his charges and that no constitutional rights of the petitioner had been violated or denied to him. From this judgment petitioner appealed to the Court of Appeals which affirmed the judgment below without an opinion.

On November 25, 1968, petitioner filed in this court his petition for habeas corpus which petition was amended March 24, 1969. The amended petition alleges, (1) petitioner was not promptly arraigned; (2) that local news media created an unfavorable atmosphere so that petitioner could not expect a fair hearing; and (3) that petitioner has a sworn statement of another person who swears he committed the murders and that petitioner had no connection therewith.

A hearing was set by the Court and continued by consent of the parties until a hearing was held on July 25, 1969, at which time witnesses were examined and in addition to the oral testimony, the records of the original trial and of the state habeas corpus proceeding and depositions of Herman Manford Fix, Jr., Jerry Fuller, Jr., Columbus Bowman and of petitioner were all offered in evidence. The Court has carefully read and reread the entire evidence and finds in respect to the amended petition that credible evidence does not sustain either one of the three propositions. It is true that Fix in his deposition says he murdered the two women but a careful study of his deposition convinces the Court that his story is unreasonable and unbelievable. He is a fellow prisoner with petitioner and he has manufactured his story to help the petitioner. The facts set forth in his deposition are without corroboration and in fact appear incapable of corroboration.

**1106**

■ The Court finds that defendant was arrested on September 14, 1964, charged with the murder of the two women and, after waiving extradition, was brought to a preliminary hearing where counsel was appointed and participated in his behalf on October 6, 1964, at which time he and his co-defendant were held for the Grand Jury. The hearing was not delayed unreasonably so as to deprive him of his constitutional rights.

■ There was no evidence to sustain the charge of the creation of an unfavorable atmosphere, although the court ordered the editor of the local paper to produce copies of the paper dealing with the murders. Petitioner and his counsel neglected to offer the witness or to introduce any copies of the paper.

His petition in the state court contained most of the charges which are repeated in the original petition in this court. In the former petition he alleged he was without counsel from his arrest September 14, 1964 until counsel was appointed for him on January 11th. The evidence is conclusive that Mr. George Sutherland was appointed and did represent him at the preliminary trial on October 6, 1964. This is a good example of his carelessness about stating facts. He also then claimed the Sheriff gave him beer and liquor and that he could prove by Miss Peggy Yates, Mrs. Wanda Jackson and Columbus Bowman who saw petitioner "in a drunken state, in the custody of the law". Neither one of them so testified. Miss Yates said the Sheriff purchased a coca cola and gave it to the petitioner. Mrs. Jackson did not see him in an intoxicated condition. Bowman said he thought he smelt beer on his breath. The Sheriff testified the charges were false. Petitioner has contradicted himself so often, and been contradicted by reputable witnesses in so many important respects and contradicted by the court records until this court cannot believe what he says. For example, in his original habeas corpus petition he says under oath, "During the course of the investigation petitioner asserts, that he was given and induced to drink alcoholic beverages in an effort by Sheriff Rife to loosen his, petitioner's tongue * * * Three persons saw the petitioner in a drunken state, in the custody of the law." The sheriff not only swore the statements were false but the three witnesses upon whom petitioner relied did not support the statement.

He claimed he did not know about his right to a jury trial, yet the whole record shows he did. He was so advised by his attorney and by the Judge who accepted the plea of guilty and imposed the sentence. He stood up in open court and told the Judge he had consulted privately with his attorney on several occasions, that he had been advised that he had a right to a trial by a jury; that upon his plea of guilty a jury does not fix the punishment; that he had been advised by his attorney that he could not be compelled to give evidence against himself but had been advised he had a right, if he wanted to, to testify but it had to be voluntary on his part; that the punishment on the plea of guilty could be for life or a term of not less than twenty years, or death, and that he understood it. In answers to further questions by the court he said he had all the opportunity he wanted to consult with his attorney and that the attorney had done all that could be done for him.

Although Sheriff Rife was dead at the time of our hearing, Mr. Sherwood, a member of the Virginia State Police, testified. He convinced the Court that he was an experienced, intelligent and truthful witness. The Court believes his testimony. He was intelligent enough to know the written statement wouldn't be worth the paper on which it was written if obtained in violation of Jackson's constitutional rights. The statement, although it was not used at the trial when he was sentenced, covers 9 pages and is in a clear, legible handwriting; the petitioner had the equivalent of a 7th grade education, there was nothing to hinder him from reading it, and he signed his name on each page and where a word was changed he initialed it. After signing it

he then signed this additional statement: "I have signed and dated each page of this 9 page statement. This statement is correctly recorded," and witnessed by Burl Rife, Sheriff, and B. F. Sherwood. The first paragraph is very pertinent: "I William Donovan Jackson, understand that I am charged with the crime of murder and further understand that any statement that I may make can be used against me in any court of law, that any statement that I wish to make must be voluntary and of my own free will; that I am entitled to counsel, that I am entitled to have my counsel present when making any statement; that I have not been threatened, abused, or coerced into making any statement nor have I been promised any reward or leniency to make any statement."

This Court finds the petitioner voluntarily made the statement and entered his plea of guilty with knowledge of his constitutional rights; that he was not coerced or intimidated and promised any leniency to induce him to make the statement or to enter his plea of guilty; he realized fully his right to a jury trial and intelligently waived that right to get the Commonwealth's attorney to recommend a sentence of fifty years in the state's prison, and frankly the Court believes he and his attorney were fortunate in saving him from death in the electric chair.

The Court finds the state had ample proof of facts and circumstances, outside of his statement, which would warrant a jury in arriving at his guilt and to fix his punishment at death in the electric chair. It was prepared to prove that Jerry Fuller, Jr., and William D. Jackson were acquainted and friends; that they were together at Fuller's home in the forepart of the fatal night of September 9, 1964; that Jackson was AWOL from Fort Gordon, Georgia; that he was wearing his army uniform at that time; that Mrs. Viers and Mrs. Owens—two elderly women—were alone in the home of Mrs. Viers; that Fuller's wife Helen was the adopted daughter of Mrs. Viers and that her husband left an estate to her for life with the remainder to go to Mrs. Fuller; that Fuller had endeavored to get her killed to hasten his wife's enjoyment of the estate; that he purchased a gun and a hunting knife for the purpose of killing Mrs. Viers, but the person refused to go through with the undertaking.

There was ample proof that the two women were murdered during the night of September 9; that each had been hit on the head with a claw hammer; that a claw hammer with blood on it was lying on the bed next morning when it was discovered they were dead, and the Coroner testified that each one had been stabbed with a knife whose blade was at least 6 inches long and that these 6 inch wounds caused their death. There was evidence to show that the things in the dresser drawers and in the closets were tumbled up and the suitcase had been cut open and the things in it tumbled up; that the watches belonging to the women were missing on the morning of the 10th; that the officers found Jackson's military uniform and his army identification tags in Fuller's outdoor toilet; and that on the next day, September 10th, Jackson was in Bluewell, West Virginia, where he sold these watches; that when he was placed in jail at Beckley, West Virginia on September 11th he was without his uniform or army identification tags. Thus his possession of the stolen watches the day after the robbery and his flight to West Virginia together with ridding himself of his army uniform and identification tags, all combined, constituted circumstantial evidence of Jackson's guilt. His written statement confirms the circumstances and leaves no room to doubt his guilt. It is true that we are not here concerned with his guilt or innocence but he claims the deposition of Fix shows he was coerced into admitting guilt when he claims now he is innocent.

In connection with the evidence of Jackson, Fix, Fuller and Bowman—all convicted felons—they were incompetent witnesses at common law and in the federal courts until modified in 1918 by Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 and in Funk v.

United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933). Such witnesses are now permitted to testify but "the credit and weight of such testimony is to be determined by the jury or by the court." The weight of their testimony does not outweigh the other evidence before the Court.

■ The present court appointed attorney for petitioner in his brief refers to Mr. Sutherland as "a very fine attorney of the old school." Donald McGlothlin, who had previously served 8 years as Commonwealth Attorney, said on July 25, 1969, if he had a case and needed a lawyer Mr. Sutherland would be his first choice. The trial Judge said of him, "He is an attorney of a good many years of experience and well qualified to represent you," (Jackson) yet the main thrust of petitioner's brief is the ineffective representation of counsel—and insinuates that he did nothing for petitioner. The evidence shows the contrary and shows the charges false and groundless.

This Court finds that petitioner's attorney pursued the course he honestly believed to be in the best interest of the petitioner and which he still believes. He represented petitioner at the preliminary hearing and knew that two elderly women were murdered in their home in the nighttime in cold blooded, premeditated murder; he knew the defendants were on the scene that night; that Jackson discarded his soldier's uniform and army identification tags in Fuller's outdoor toilet, all of which were found and then in the possession of the Sheriff's department; that he fled that night and was in Bluewell, West Virginia the next day where he disposed of the two watches belonging to the women who were murdered, and that he was picked up on September 11, 1964, in Beckley, West Virginia for the army authorities on being AWOL; that Sheriff Rife of Buchanan County, arrested him on the two murder warrants on September 14th and brought him to the jail in Buchanan County where he was confined until the preliminary hearing on October 6, 1964, and held for the Grand Jury. He knew of the conflicting statements Jackson made to the Sheriff and State Police and the 9 page written confession on November 13, 1964. When the attorney was appointed to represent Jackson on January 11, 1965, he advised his client and the Court not to plead until he could confer; he tentatively consented for the case to be set for trial on February 1, 1965. The defendant told the Court that he had conferred privately several times with his attorney and that the attorney had done all he could; that he was satisfied; that the attorney had explained to him that upon a plea of guilty the jury would not fix the punishment; that he could have a jury trial if he wanted one, but that on the plea of guilty the judge fixed the punishment which could be death or imprisonment for life or for a term not less than twenty years; that the attorney explained to him what murder in the first degree was.

Confronted with the foregoing facts it appears to this Court that Jackson's lawyer rendered valiant service by saving him from a sentence of death. Mr. Sutherland tried unsuccessfully to induce the Commonwealth's attorney to recommend 25 years instead of fifty. What more could he do? The defendant had no defense. It would have been impossible to establish an alibi without fabricating such a defense based on perjured testimony.

■ The lawyer is not required to act dishonorably or to manufacture a defense when none exists. The facts here are radically different from those of Coles v. Peyton, 4 Cir., 389 F.2d 224 on which petitioner's counsel relies so heavily. In that case there were clear valid defenses which were not employed by defense counsel. In this case, Sutherland had very limited choices. He could gamble on a jury trial in which event his client might have received the death penalty. He avoided this by pleading guilty and getting a generous recommendation from the Commonwealth's attorney for a sentence of fifty years with

parole eligibility on serving one third of the sentence. The assault on Mr. Sutherland by the petitioner comes with poor grace. This case illustrates why lawyers with experience and good reputation do not want to represent indigent defendants for the mere pittance of compensation allowed and to become a target for an unjustified assault upon his professional standing.

The written confession on November 13, 1964 and his plea of guilty on February 1, 1965 were his voluntary acts and neither was the product of coercion or pressure. It is true that on November 13, no lawyer was representing him but he was told he could have one and he knowingly waived it. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) has no application to this case, Frazier v. Cupp, 394 U.S. 731 at 738, 89 S.Ct. 1420, 22 L.Ed.2d 684. Jackson's confession was less subject to exclusion than was the confession in the Cupp case. Furthermore, Jackson's plea of guilty after consultation with his lawyer and the very detailed explanation by the trial judge, of petitioner's constitutional rights, is free from coercion, free from ignorance on his part, and represents a wise choice on his part which, fortunately for him, enabled him to escape the electric chair—The facts here met the requirement in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. See United States v. Black, 4 CCA, 415 F.2d 230, decided Sept. 11, 1969.

The petition for relief is denied and the clerk will certify a copy of this document to the petitioner and to his attorney and to the respondent. Petitioner is allowed an exception to this Court's findings of fact and conclusions of law and to its refusal to find and conclude as requested by petitioner's counsel, and is allowed to appeal if he so desires, in forma pauperis, with his present attorney assigned to prosecute the appeal. Let the prisoner be returned to the custody of the respondent, the Superintendent of the State's penitentiary, and the petition is hereby dismissed.