Rhonda WILLIAMS, a/k/a Victoria Tribble, Petitioner–Appellant,

v.

Elaine LORD, Superintendent, Bedford Hills Correctional Facility, Respondent–Appellee.

No. 626, Docket 92–2429.

United States Court of Appeals, Second Circuit.

Argued May 20, 1992.

Decided July 1, 1993.

Mary C. Rothwell, New York City (The Legal Aid Soc., New York City, Philip L. Weinstein, of counsel), for petitioner-appellant.

Robin A. Forshaw, Asst. Dist. Atty., Kew Gardens, NY (Richard A. Brown, Dist. Atty. of Queens County, Barbara D. Underwood, Asst. Dist. Atty., Kew Gardens, NY, of counsel), for respondent-appellee.

Before LUMBARD, CARDAMONE, and McLAUGHLIN, Circuit Judges.

LUMBARD, Circuit Judge:

Rhonda Williams appeals from a judgment of the Eastern District of New York, Korman, J., dismissing her petition for a writ of habeas corpus. The district court rejected her contention that her 1987 conviction in the Supreme Court of New York, Queens County, on charges of second degree murder and criminal possession of a weapon, violated her constitutional right to present a defense because the trial court excluded evidence of the victim's prior violent act. We affirm.

On July 9, 1986, Williams fatally stabbed John Neil Bennett in the chest in a parking lot located at 41–09 12th Street in Queens County, New York. The next day, the New York City Housing Authority Police, following a tip, questioned her about the incident. She admitted stabbing Bennett but claimed she had acted in self-defense. She made both a written and a videotaped statement to that effect.

According to these statements, Williams, a prostitute, was paid by Bennett to have oral sex. While in his car, Bennett smoked some crack for about fifteen minutes and then "started going crazy," grabbing her by the neck, calling her a "bitch," and saying "you ain't going nowhere." He punched her in the

face and legs. He then grabbed a knife from under the seat and cut her arm. When he tried to cut her face, she grabbed the knife by the blade, wrestled it from him, and stabbed him in the chest. She got out of the car and ran, as Bennett yelled, "[b]itch, you cut me." She threw the knife behind a storefront grate. She then found her "man," Kenneth Simmons, who had her retrieve the knife, which he threw down a sewer.

At trial, the government introduced both Williams' written and videotaped statements. The police officers who interrogated her testified that they had not noticed any evidence that she had been injured, such as blood on her body or swelling. Furthermore, the medical examiner testified that the only injuries suffered by Bennett were the stab wound and a small abrasion on one finger of his left hand. The toxicologist testified that no drugs or alcohol were found in Bennett's system and concluded that this was "inconsistent" with his having smoked crack.

During trial, a prosecutorial memorandum revealing that Bennett was the subject of a prior rape investigation was inadvertently disclosed to the defense. Defense counsel tried unsuccessfully to contact the victim in the prior rape, whom we shall refer to as Doe, but was told by her mother that Doe had identified Bennett as the rapist.

Defense counsel moved for a continuance to allow Doe to appear in court to identify Bennett. In response to the court's questions as to the admissibility of this testimony, counsel argued it should be admissible because the similarities between the two situations suggested that Bennett had a "modus operandi of committing these types of assaultive acts in conjunction with sexual assaults." *Cf. People v. Molineux*, 168 N.Y. 264, 293, 61 N.E. 286 (1901) (evidence of a defendant's prior acts admissable to show motive, intent, absence of mistake, identity, or a common scheme or plan).

The court denied the motion, and Williams offered no evidence in her defense. The jury convicted, and Williams was sentenced to concurrent terms of imprisonment of fifteen years for murder and one year for weapons possession.

Williams moved to set aside the verdict, claiming that the government's failure to disclose information concerning the rape investigation in a timely manner was prosecutorial misconduct. Doe's affidavit in support of this motion established that she had gone out with "Neil," who had raped her at knifepoint after smoking some marijuana. She had identified Bennett's picture in July 1986 and was told by the police that he was dead. Defense counsel argued that this testimony was admissible to show a modus operandi, motive, intent, or absence of mistake. The court denied her motion, ruling that "[e]vidence to show the reputation of the victim as a person of violence or specific violent acts of the victim, are [sic] admissible only if the defendant had knowledge thereof prior to the homicide of the victim, of which the defendant had concededly none." *See In re Robert S. (anonymous)*, 52 N.Y.2d 1046, 438 N.Y.S.2d 509, 420 N.E.2d 390 (1981) (reaffirming the exclusion of evidence of the victim's prior violent acts, if the defendant was unaware of the acts).

Williams appealed, arguing that the evidence was crucial to her defense and noting that New York followed the minority rule as to its admissibility. She urged the admission of this evidence, claiming, "When a defendant's constitutional right to present a defense is implicated, the court should err on the side of admissibility. *United States v. Nixon*, 418 U.S. 683, 709 [94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039] (1974); *Chambers v. Mississippi*, 410 U.S. 284, 302 [93 S.Ct. 1038, 1049, 35 L.Ed.2d 297] (1973)." The Appellate Division affirmed her conviction, without commenting on the evidentiary issue. *People v. Williams*, 160 A.D.2d 753, 553 N.Y.S.2d 818 (2d Dep't 1990).

In a letter dated April 16, 1990, Williams sought leave to appeal to the New York Court of Appeals, claiming, "Where evidence goes to the heart of a defendant's case, his right to present a defense outweighs trial court discretion to prohibit such evidence. *People v. Hudy*, 73 N.Y.2d 40, 56–58 [538 N.Y.S.2d 197, 535 N.E.2d 250] (1988)." The Court of Appeals summarily denied her application. *People v. Williams*, 76 N.Y.2d 745, 558 N.Y.S.2d 906, 557 N.E.2d 1202 (1990).

Williams then filed the instant petition, alleging that the exclusion of the evidence violated her constitutional right to present a defense under the Fifth, Sixth, and Fourteenth Amendments. Noting that it was "doubtful whether [she] properly alerted the New York courts to the federal constitutional underpinning of her claim," the district court denied the writ, reasoning that the rule was constitutional because it did not arbitrarily exclude more evidence than was justified by its purpose. Williams now appeals.

A. *Exhaustion of state court remedies*

We find that Williams has exhausted her state court remedies. Although she did not cite specific constitutional provisions in her brief to the Appellate Division, she explicitly asserted her constitutional right to present a defense. Furthermore, she cited a leading Supreme Court case in this area, *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973) (holding that an evidentiary rule barring a party from impeaching his own witness violated the constitutional right to present a defense).

Thus, Williams satisfied the exhaustion requirement by fully presenting her claim to the state court. *See Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir.1982) (in banc), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). Her reliance on the constitutional right to present a defense presented her claim by stating it "in terms so particular as to call to mind a specific right protected by the Constitution." *Id.* at 194. Furthermore, her citation to *Chambers* and *Nixon*, "pertinent federal cases employing constitutional analysis," also satisfied this requirement. *Id.; see also Abdurrahman v. Henderson*, 897 F.2d 71, 73 (2d Cir.1990) (petitioner's mention of "*Strickland v. Washington*" in a *pro se* supplemental brief adequately alerted the Appellate Division to his constitutional claim of ineffective assistance of counsel).

B. *Constitutional right to present a defense*

Williams claims that the exclusion of evidence in this case violated her constitutional right to present a defense. Although the source of this right is somewhat unclear, its existence is well established. As the Supreme Court explained: "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986) (citations omitted); *see also United States v. Almonte*, 956 F.2d 27, 30 (2d Cir.1992) (per curiam) ("The due process clause of the Fifth Amendment and the compulsory process clause of the Sixth Amendment guarantee each criminal defendant the right to present a defense.") (citing *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir.1988)).

Of course, the right to present a defense "is not absolute, and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046. Such restrictions, however, may not be "arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 55–56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987). Thus, "a State must evaluate whether the interests served by a rule justify the limitations imposed on the defendant's constitutional right to testify." *Id.*

We believe that the limitation on Williams' ability to introduce evidence of Bennett's prior rape satisfies the balancing test set forth in *Rock*. The rule at issue serves two legitimate state interests. First, New York has an interest in seeing that every person, regardless of his worth to the community, is not unlawfully assaulted. *See People v. Miller*, 39 N.Y.2d 543, 551, 384 N.Y.S.2d 741, 349 N.E.2d 841 (1976) (a "jury [might] find a homicide justifiable for the wrong reason— i.e., that the deceased was unworthy of life"). Moreover, "there is a very real danger that the trier of fact will overestimate [the evidence's] significance." *People v. Hudy*, 73 N.Y.2d 40, 55, 538 N.Y.S.2d 197, 535 N.E.2d 250 (1988). Second, by avoiding the need to establish the truth of Doe's accusation about the rape, the rule narrows the issues for the jury, preventing "undue diversion to collater-

al matters." *Miller*, 39 N.Y.2d at 551, 384 N.Y.S.2d 741, 349 N.E.2d 841.

Moreover, this evidence has little probative value. It does not bear on the reasonableness of Williams' actions, because she did not know Bennett was a suspect in a prior rape. Nor were the attacks on Williams and Doe similar enough to constitute evidence of a modus operandi on Bennett's part. Therefore, the evidence is only relevant to Bennett's general propensity for violence. Under New York law, however, propensity evidence is viewed as having limited relevance. "[T]he commission of an independent offense is not proof in itself of the commission of another crime." *Molineux*, 168 N.Y. at 293, 61 N.E. 286. Thus, such evidence has "little or no bearing on the guilt or innocence of the defendant." *Miller*, 39 N.Y.2d at 551, 384 N.Y.S.2d 741, 349 N.E.2d 841.

Accordingly, we find that the balance drawn by New York in excluding such evidence is neither arbitrary nor disproportionate. Williams was not denied her constitutional right to present a defense. The goals served by New York's rule, along with the evidence's limited relevance, justify its exclusion. To the same effect is the First Circuit's decision in *Lagasse v. Vestal*, 671 F.2d 668, 669 (1st Cir.), *cert. denied*, 457 U.S. 1122, 102 S.Ct. 2939, 73 L.Ed.2d 1337 (1982), holding that a rule similar to New York's rule did not violate defendant's right to a fair trial because "the exclusion of the proffered testimony was a rational means of barring marginally relevant but highly prejudicial evidence."

Affirmed.

CARDAMONE, Circuit Judge, concurring:

I write separately from my respected colleague Judge Lumbard because I am troubled by the application in this case of New York's evidentiary rule.

A state in a criminal case may place restrictions on a defendant's introduction of evidence without violating the constitutional right to present a defense so long as those restrictions are neither arbitrary, *see Washington v. Texas*, 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967); *see also*

*Chambers v. Mississippi*, 410 U.S. 284, 297, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973), nor "disproportionate to the purposes they are designed to serve," *Rock v. Arkansas*, 483 U.S. 44, 55–56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37 (1987). Accordingly, when a state adopts an evidentiary rule limiting the admission of relevant proof, the test applied to that rule is whether the legitimate interests advanced by the state outweigh the defendant's right to introduce exculpatory evidence. I concur with the majority that the New York rule at issue before us, which permits evidence of a murder victim's prior violent acts only if the defendant had knowledge of those acts at the time of the homicide, *see People v. Miller*, 39 N.Y.2d 543, 551, 384 N.Y.S.2d 741, 349 N.E.2d 841 (1976), passes this constitutional balancing test. Yet, a stated rule may be generally constitutional and still be unjust when applied to a given case. Such is the fact here.

It is helpful to recapitulate briefly the facts and circumstances underlying this appeal. The defendant, Rhonda Williams, conceded that she killed John Neal Bennett on July 9, 1986 in a Queens, New York parking lot. But she asserted an affirmative defense of justification, explaining that the fight between them that resulted in Bennett's death began when he attacked and attempted to rape her in a drug-induced rage. There was some evidence of cuts to her hand and other minor abrasions to her body that lent credence to her assertion that she had struggled to wrest Bennett's knife away from him. Significantly, Williams sought to support her defense by introducing testimony that the deceased had committed a similar drug-induced attack at knife-point and actually raped another woman, Doe, in the same area of Queens a few months prior to his claimed attack on her. The New York State trial court barred such testimony because defendant Williams admittedly was not aware of Bennett's attack on Doe when she killed him.

The purpose of New York's rule is to admit evidence only insofar as it sheds light on the defendant's state of mind; that is, the rule permits a defendant to demonstrate the reasonableness of her apprehension of violent behavior by the deceased. Williams sought

to introduce victim Doe's testimony on the separate and distinct issue of whether Bennett was the initial aggressor on July 9, 1986. She insists on appeal that a victim's character and prior conduct may be quite relevant to determining his behavior at the time of the homicide and thus may support a defendant's claim of self-defense. *See* 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 404[06] (1992). The question posed "is what the deceased probably did, not what the defendant probably thought the deceased was going to do. The inquiry is one of objective occurrence, not of subjective belief." 1 John H. Wigmore, *Wigmore on Evidence* § 63 (3d ed. 1940).

Most states and the Federal Rules of Evidence have recognized this distinction and, as a consequence, would have considered admitting Doe's testimony, subject to the general rules of exclusion and trial court discretion. *See In re Robert S.*, 52 N.Y.2d 1046, 1049, 438 N.Y.S.2d 509, 420 N.E.2d 390 (1981) (Fuchsberg, J. dissenting); *see also United States v. Burks*, 470 F.2d 432, 435 & n. 4 (D.C.Cir.1972) (Skelly Wright, J.). The New York rule, which completely ignores the relevance of prior acts of violence in the present circumstances, is now the much criticized minority view.

For essentially the reasons offered by Judge Lumbard, I am not persuaded that New York's rule is so disproportionate to the state's legitimate interests as to transgress constitutional limits in this case. *Cf. LaGasse v. Vestal*, 671 F.2d 668, 669 (1st Cir.) (involving a challenge to a similar Maine rule of evidence), *cert. denied*, 457 U.S. 1122, 102 S.Ct. 2939, 73 L.Ed.2d 1337 (1984). Yet, New York may want to reconsider its restrictive rule that not only, like sand thrown in the face of the wind, bucks the more enlightened modern trend, but also fails to recognize that the truth of whether a defendant is guilty or innocent is more likely to emerge by hearing the testimony of those possessing relevant facts, leaving the weight of such evidence to be determined, under proper instructions, by a jury. *See Rosen v. United States*, 245 U.S. 467, 471, 38 S.Ct. 148, 150, 62 L.Ed. 406 (1918).

The Supreme Court gives a principled rationale for a more flexible posture, one assuring fairness to a defendant in those cases that should be excepted from the rule. It teaches that a state's legitimate interest in barring certain proof, imposed without exception, may pass constitutional muster. But such a rule does not always justify the exclusion of *all* proof that might be proffered under it. The state's legitimate policy of excluding proof that it deems a wrong reason for acquittal should not be a blanket rule of exclusion for evidence that may be found reliable in an individual case. *See Rock v. Arkansas*, 483 U.S. at 61, 107 S.Ct. at 2714.

New York has not looked at how its rule applies to an objective occurrence but only narrowly as a matter of defendant's subjective knowledge. However, because New York's rule is constitutional I am constrained to concur with the majority in affirming the denial of the petition for a writ of habeas corpus.